<table>
<tr><td>

DISTRICT COURT, CITY AND COUNTY OF DENVER,
STATE OF COLORADO
1437 Bannock Street
Denver, Colorado 80202
720-865-8301

</td><td>

DATE FILED: July 27, 2018 2:14 PM
FILING ID: D4DB279122600
CASE NUMBER: 2018CV32788

</td></tr>
</table>

| | |
|---|---|
| Plaintiff:  Statebridge Company, LLC<br><br>v.<br><br>Defendant:  Martin-Powell, LLC, doing business as Accumatch | **COURT USE ONLY** |
| Michael G. Milstein<br>Foster Graham Milstein & Calisher LLP<br>360 S. Garfield Street, 6th Floor<br>Denver, CO  80209<br>Phone: (303)333-9810<br>Fax: (303)333-9786<br>Email:  michael@fostergraham.com;<br>Atty. Reg. Nos.:  23833 | Case Number:<br><br><br>Courtroom: |

## COMPLAINT

Plaintiff, Statebridge Company, LLC, by its attorneys, Foster Graham Milstein & Calisher LLP, sets forth its Complaint against Martin-Powell, LLC, doing business as Accumatch (hereinafter "Defendant" or "Accumatch") as follows:

### PARTIES AND VENUE

1.      Plaintiff Statebridge Company, LLC ("Statebridge") is a Colorado limited liability company with its principal place of business located at 5680 Greenwood Plaza Blvd., Suite 100S, Greenwood Village, Colorado, 80111.

2.      Defendant Martin-Powell, LLC is a Texas limited liability company with its principal address located at 2711 LBJ Freeway, Suite 1065, Dallas, Texas, 75234.

3.      Defendant conducts business in Colorado using the tradename "Accumatch."

4.      Defendant's registered agent is Brad A. Martin, 2711 LBJ Freeway, Suite 1065, Dallas, Texas, 75234.  Brad A. Martin is also an officer of Defendant.

EXHIBIT B

5.     Although Accumatch is a non-resident of Colorado, this Court has personal jurisdiction over Accumatch because Accumatch has transacted business with Statebridge in the state of Colorado.

6.     Venue is proper in the City and County of Denver because Defendant does not reside in Colorado, and Denver is the County designated in the Complaint.  Further, the parties agreed in their written contract that the proper venue for any dispute arising out of their agreement shall be Denver County, Colorado.

## GENERAL ALLEGATIONS

7.     Statebridge's principal business is servicing loans in the mortgage industry. Statebridge enters into servicing contracts with mortgage holders and "services" the loans by performing tasks as the agent and/or contractor for the lender, such as collecting payments from the borrowers and paying property taxes related to the real property that secures each loan.

8.     Accumatch is in the business of providing tax-payment processing services and tax matching services to lenders and loan servicers, like Statebridge.  Accumatch's business involves making sure that a mortgage servicer, like Statebridge, correctly and timely pays the property taxes due on real property that secure loans serviced by the loan servicer.

9.     Accumatch holds itself out as having decades of expertise in the real estate tax service industry and claims that Accumatch is the leading provider of advanced matching and database technology within said industry.

10.     The importance of Accumatch's duties and services to Statebridge is underscored by the risk of loss to collateral securing a loan (in most cases, the collateral is real property) if the property taxes are not paid through Accumatch's services.  If there is loss of collateral from non-payment of taxes, the resulting loss is a loan becoming unsecured or under-secured, or (in cases where the lender also has title) the inability to sell the property to the borrower at the end of the loan term, thereby causing harm and damages to the lenders and others.

11.     On or about January 23, 2015, Statebridge and Accumatch entered into a "*Property Tax Intelligence Services Agreement*" (hereinafter referred to as the "Agreement").  A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

12.     Pursuant to the Agreement, Accumatch agreed (among other things) to provide tax payment services on loans serviced by Statebridge.

13.     As part of the Agreement, Accumatch was responsible for sending the appropriate property tax payments and the appropriate back up information to remit applicable tax payments to the appropriate taxing authorities for each loan serviced by Statebridge and assigned to Accumatch under the Agreement for tax services.

14.     According to the Agreement, in order for Accumatch to provide services to Statebridge under the Agreement, Statebridge must provide Accumatch with access to Statebridge's online imaging system.  See **Exhibit 1**, Section 2(E).

15.     Statebridge's online imaging system is called Security Connections Incorporated ("SCI") and referred to in the Agreement as Statebridge's "SCI system."  **Exhibit 1**, Section 2.

16.     The SCI system is the database that, among other things, contains the electronic records related to each loan served by Statebridge, including images of the loan documents, such as the note and deed of trust.

17.     According to the Agreement, Accumatch agreed that and was obligated to look to retrieve all relevant information on each loan assigned to Accumatch from the SCI system. **Exhibit 1**, Section 2.  This information included, however was not limited to, the street address and Tax Identification Number for each parcel of property associated with each loan assigned to Accumatch.

18.     Accumatch agreed that it would, within five (5) business days, perform a review of the information it obtained from the SCI system and from Statebridge. **Exhibit 1,** Section 2, Page 3.

19.     Following said review, if Accumatch had any reasonable belief that the information it obtained was inaccurate or insufficient, it agreed it would notify Statebridge about the issue within two (2) business days of Accumatch's review.  **Exhibit 1,** Section 2, Page 3.

20.     Accumatch did not notify Statebridge about any issues with the data and information Accumatch obtained in connection with its review of the loan data Accumatch obtained in connection with the assigned loans that are the subject matter of this action.

### Loan 11671 – the Buford Smith loan

21.     On or about August 3, 2009, Ravenswood Bank in Chicago made a loan to Buford Smith, Jr., the borrower, in the original principal amount of $191,950 (hereinafter referred to as the "Smith Loan" or "Loan 11671").

22.     The Smith Loan was originally secured by certain real property located in Cook County, Illinois, with a street address of 22 S. Western, Unit 401, Chicago, Illinois 60612 (the "Smith Property").

23.     The fact that the Smith Loan was secured by the Smith Property was documented with a written Mortgage.

24.     Said Mortgage was recorded in the Cook County real estate records and created an encumbrance on the Smith Property to secure the Smith Loan.

25.     The owners of the Smith Property at the time the Smith Loan was made were Buford Smith, Jr, the borrower under the Smith Loan, and his wife, Sharon Smith.

26.     Both Buford Smith, Jr. and Sharon Smith signed the Mortgage.

27.     The Smith Loan was sold and assigned to SFR Venture 2011-1 Structured Transaction ("SFR").  SFR is the current owner and holder of the Smith Loan.

28.     MountainView Public Private Investment I, LLC ("MountainView") is the manager of SFR.

29.     On or about September 1, 2011, MountainView and Statebridge entered into a Servicing Agreement pursuant to which MountainView appointed Statebridge to service, administer, manage and dispose of SFR's assets and collateral as an agent of MountainView, including, however not limited to, the Smith Loan.

30.     Statebridge entered into the Agreement (**Exhibit 1**) with Accumatch to provide tax services in connection with certain loans Statebridge was servicing under its Servicing Agreement with MountainView, including the Smith Loan.

31.     Per the Agreement, Statebridge assigned the Smith Loan to Accumatch for tax servicing on or about March 16, 2015.

32.     In connection with the assignment of the Smith Loan to Accumatch, Statebridge provide Accumatch with access to the SCI system so that Accumatch could obtain the information Accumatch needed to provide tax services for the Smith Loan under the Agreement.

33.     The access to the SCI and other information provided by Statebridge to Accumatch contained all of the required information for Accumatch to provide full and complete tax services to the Smith Loan per the Agreement.  This information included, however is not limited to, the full and complete address for the Smith Property, including the unit number.

34.     In the event the loan information Accumatch needed regarding the Smith Loan was not available through the SCI system that Accumatch had access to, Accumatch could request, and Statebridge would be obligated to provide, the necessary additional information.

35.     Upon information and belief, Accumatch, per its obligations under the Agreement, timely performed a review of the information it obtained from Statebridge relating to the Smith Loan.

36.     Following Accumatch's review, Accumatch did not notify Statebridge that any of the information relating to the Smith Loan was inaccurate or insufficient.

37.     The information Accumatch obtained from Statebridge and that was available on the SCI system clearly identified that the correct address for the Smith Property was 22 S. Western Ave, Unit 401, Chicago, Illinois.

38.     Upon information and belief, Accumatch erroneously entered the Smith Loan onto Accumatch's system using an erroneous property address of 22 S. Western Ave., Unit 304, Chicago, Illinois (the "Erroneous Smith Address").

39.     Statebridge never provided Accumatch with the Erroneous Smith Address.

40.     Rather, upon information and belief, the correct unit number for the Smith Property (Unit 401) as shown in the SCI system was overwritten by Accumatch as part of Accumatch's internal address standardization process.

41.     Through its own error, act or omission, Accumatch believed that the Smith Loan was secured by the property located at the Erroneous Smith Address.

42.     The Erroneous Smith Address is solely and exclusively attributable to Accumatch's own error, act or omission

43.     As of the March 16, 2015, the Smith Loan had been assigned to Accumatch, and Accumatch was obligated to provided tax services for the Smith Loan per the Agreement.

44.     On June 26, 2015, Statebridge alerted Accumatch that Statebridge had received notice of a tax sale in connection with the real property that Statebridge understood was securing the Smith Loan (the Smith Property).

45.     In response to the June 26, 2015 notice, Accumatch assured Statebridge that the taxes due in connection with the property securing the Smith Loan were not delinquent and that the property securing the Smith Loan had not gone to tax sale.

46.     Accumatch's June 26, 2015 assurance to Statebridge was wrong because Accumatch was using the Erroneous Property Address.

47.     On July 29 and 30, 2015, Statebridge sent additional notifications to Accumatch that the property Statebridge understood secured the Smith Loan (the Smith Property) had been sold for taxes, and that the deadline for redemption was August 4, 2015.

48.     On August 1, 2015, Accumatch responded to Statebridge's notifications, again assuring Statebridge that there was no sale or delinquencies in connection with the property that Accumatch believed secured the Smith Loan.

49.     Accumatch's August 1, 2015 assurance to Statebridge was wrong because Accumatch was using the Erroneous Property Address.

50.     Accumatch failed to pay the property taxes due for the Smith Property per the Agreement.

51.     In fact, the taxes for the Smith Property were delinquent, and title to the Smith Property was lost to a tax sale on or about August 4, 2015, because Accumatch did not pay the taxes, as it was obligated to do under the Agreement.

52.     As a result of Accumatch's breach of the Agreement and failure to pay the property taxes due for the Smith Property, title to the Smith Property securing the Smith Loan was lost at a tax sale, and the Smith Loan became unsecured.

53.     Accumatch's failure to pay the taxes for the Smith Property was a breach of the Agreement.

54.     As a result of Accumatch's breach of contract, Statebridge sustained losses and has been harmed and damaged in an amount to be proven at trial.

55.     On or about December 7, 2017, Statebridge sent notice to Accumatch of the losses sustained as a result of the loss of title to the Smith Property and requested payment of $125,420.16 to indemnify Statebridge for the loss of the Smith Property.

### Loan 25604 - 2371 Pineneedle Court

56.     On or about December 5, 2008, RECA Limited Partnership, entered into a purchase money note in the principal amount of $44,400 with Carol McDonald, the borrower (the "McDonald Loan").

57.     The McDonald Loan was originally secured by an Agreement for Deed – Land Contract (the "Agreement for Deed") for the real property known as 2371 Pineneedle Court, Hamer, South Carolina, 29547, County of Dillon, Tax Map #033-00-00-368 (the "Pineneedle Property")

58.     Pursuant to the Agreement for Deed, RECA Limited Partnership agreed to sell, and Carol McDonald agreed to purchase the Pineneedle Property for a non-refundable down payment of $500, with the balance of the purchase price ($44,400) to be paid over time pursuant to the terms set forth in the McDonald Loan.

59.     Carol McDonald resides in the Pineneedle Property.

60.     The McDonald Loan and the Agreement for Deed were assigned and the Pineneedle property was sold to Home Opportunity, LLC.

61.     Home Opportunity, LLC is the current owner and holder of the McDonald Loan and Agreement for Deed.

62.     Home Opportunity, LLC, was the owner of title to the Pineneedle Property prior to December 15, 2017.

63.     On or about August 20, 2015, Statebridge, as servicer, and Window Rock Mortgage, LLC ("WRM") entered into a Servicing Agreement, pursuant to which Statebridge agreed to service and administer certain loans owned by WRM and WRM's affiliates.

64.     Home Opportunity, LLC is one of WRM's affiliates.

65.     WRM is a manager of Home Opportunity, LLC.

66.     The McDonald Loan was one of the loans assigned to Statebridge for servicing under the Servicing Agreement between Statebridge and WRM.

67.     Part of Statebridge's duties under the Servicing Agreement with WRM included the safeguarding Home Opportunity, LLC's interest and rights in the Pineneedle Property.

68.     In or about September of 2015 Statebridge assigned the McDonald Loan to Accumatch for tax servicing under the Agreement.

69.     Statebridge provided Accumatch with access to the SCI system to obtain information relevant to provide tax services for the McDonald Loan.

70.     The SCI system and other information provided by Statebridge to Accumatch contained all of the required information Accumatch needed to provide tax services for the McDonald Loan under the Agreement, including the full and complete address for the Pineneedle Property that was the subject matter of the McDonald Loan.

71.     In the event the loan information Accumatch needed regarding the McDonald Loan and Pineneedle Property was not available through the SCI system that Accumatch had access to, Accumatch could request, and Statebridge would be obligated to provide, the necessary additional information.

72.     Upon information and belief, Accumatch per its obligations under the Agreement, timely performed a review of the information provided by Statebridge relating to the McDonald Loan.

73.     Following its review, Accumatch did not notify Statebridge that any of the information relating to the McDonald Loan was inaccurate or insufficient.

74.     The information provided by Statebridge clearly identified that the address for the Pineneedle Property was 2371 Pineneedle Court, Hamer, South Carolina, 29547, with a map number of 033-00-00-368.

75.     The map number of 033-00-00-368 in the SCI system matched up with the map number for the Pineneedle Property contained in the records of the tax assessor for Dillon County, South Carolina.

76.     Upon information and belief, Accumatch erroneously identified the McDonald Loan on Accumatch's system using a map number of 033-00-00-002 (the "Erroneous Map Number").

77.     The Erroneous Map Number relates to real property owned by the Carter Family Irrevocable Trust, located at 3388 Whitmire Hwy, in Union, South Carolina.

78.     Statebridge never provided Accumatch with the Erroneous Map Number.

79.     Statebridge made available and/or disbursed funds to Accumatch in the amount necessary to pay the property taxes associated with the Pineneedle Property, and Accumatch been using the correct property address.

80.     Accumatch failed to pay the property taxes for the Pineneedle Property, and instead remitted the funds that were disbursed by Statebridge to Accumatch to the wrong property tax account.

81.     As a result of Accumatch's failure to perform under the Agreement, title to the Pineneedle Property was lost to tax sale, making it impossible for Home Opportunity, LLC to perform under the Agreement for Deed.

82.     As a result of Accumatch's breach of contract, Statebridge is liable to Home Opportunity and WRM for failing to protect the Pineneedle property and the losses sustained losses in an amount to be proven at trial.

83.     The current owner of the Pineneedle Property RJTS Properties, LLC.

84.     RJTS Properties, LLC acquired title to the Pineneedle Property through the tax sale.

85.     RJTS Properties, LLC has most recently demanded $30,000 to convey title to the Pineneedle Property.  However, that offer is not in writing, and the value of the property is significantly more than $30,000.

86.     RJTS Properties, LLC paid $8,000 in back taxes to acquire title to the Property.

87.     Statebridge has been paying rent to RJTS Properties, LLC so that Carol McDonald can continue to reside in the Pineneedle Property while Statebridge attempts to remedy the loss of title caused by Accumatch's breach of contract.

88.     On or about February 21, 2018, Statebridge sent notice to Accumatch of the losses sustained as a result of the loss of title to the Pineneedle Property, and requested payment of $30,000, which was the amount needed to repurchase the Pineneedle Property from RJTS Properties, LLC, and for Statebridge to indemnify and WRM and Home Opportunity for the loss of the Pineneedle Property.

89.     Accumatch has refused and denied responsibility.

## Loan 18781 – the LaFountain loan

90.     On or about September 16, 2004, First Alternative Mortgage Corp. made a loan to Shawn M. LaFountain and Jackie L. LaFountain, the borrowers, in the original principal amount of $118,044 (hereinafter referred to as the "LaFountain Loan" or "Loan 18781").

91.     The LaFountain Loan was originally secured by certain real property located in Clinton County, New York, with a street address of 145 Huguenot Street, New Rochelle, New York, 10801 (the "LaFountain Property").

92.     The fact that the La Fountain Loan was secured by the LaFountain Property was documented with a written Mortgage.

93.     Said Mortgage was recorded in the Clinton County real estate records and created an encumbrance on the LaFountain Property to secure the LaFountain Loan.

94.     The owners of the LaFountain Property at the time the LaFountain Loan was made were Shawn M. LaFountain and Jackie L. LaFountain.

95.     Both Shawn M. LaFountain and Jackie L. LaFountain signed the Mortgage.

96.     The Loan Agreement was modified on or about December 31, 2010.

97.     The LaFountain Loan was sold and assigned to Flat Rock Mortgage Investment Trust, c/o U.S. Bank Trust National Association ("Flat Rock").  Flat Rock is the current owner and holder of the LaFountain Loan.

98.     On or about May 8, 2014, Flat Rock and Statebridge entered into a Master Servicing Agreement pursuant to which Flat Rock appointed Statebridge to service, administer, manage and dispose of Flat Rock's assets and collateral as Flat Rock's independent contractor.

99.     The Master Servicing Agreement included servicing the LaFountain Loan.

100.    Statebridge entered into the Agreement (**Exhibit 1**) with Accumatch to provide tax services in connection with certain loans Statebridge was servicing under its Servicing Agreement with Flat Rock, including the LaFountain Loan.

101.    Per the Agreement, Statebridge assigned the LaFountain Loan to Accumatch for tax servicing on or about February 5, 2015.

102.    In connection with the assignment of the LaFountain Loan to Accumatch, Statebridge provide Accumatch with access to the SCI system so that Accumatch could obtain the information Accumatch needed to provide tax services for the LaFountain Loan under the Agreement.

103.    The access to the SCI and other information provided by Statebridge to Accumatch contained all of the required information for Accumatch to provide full and complete tax services to the LaFountain Loan per the Agreement.

104.    In the event the loan information Accumatch needed regarding the LaFountain Loan was not available through the SCI system that Accumatch had access to, Accumatch could request, and Statebridge would be obligated to provide, the necessary additional information.

105.    Upon information and belief, Accumatch, per its obligations under the Agreement, timely performed a review of the information it obtained from Statebridge relating to the LaFountain Loan.

109.    Following Accumatch's review, Accumatch did not notify Statebridge that any of the information relating to the LaFountain Loan was inaccurate or insufficient.

110.    Upon information and belief, on or about September 26, 2016, Accumatch remitted a check to Clinton County in the amount of $1,572.14 to pay the taxes due for the LaFountain Property.

111.    Upon information and belief, Clinton County returned said check to Accumatch because it did not include a $20 advertising fee that Clinton County claimed due.

112.    On October 7, 2016, Clinton County served notice of a tax foreclosure on the LaFountain Property.

113.    Clinton County took title to the LaFountain Property on or about January 7, 2017.

114.    Statebridge attempted to reverse the tax sale, based on sworn testimony that US Bank did not received notice of the tax sale of the LaFountain property.

115.    Clinton County, however, had proof that the county in fact provided notice to US Bank.

116.    The LaFountain Loan had been assigned to Accumatch, and Accumatch was obligated to provided tax services for the LaFountain Loan per the Agreement.

117.    Accumatch failed to pay the property taxes due for the LaFountain Property per the Agreement.

118.    In fact, the taxes for the LaFountain Property were delinquent, and title to the LaFountain Property was lost to a tax sale on or about August 4, 2015, because Accumatch did not pay the taxes, as it was obligated to do under the Agreement.

119.    As a result of Accumatch's breach of the Agreement and failure to pay the property taxes due for the LaFountain Property, title to the LaFountain Property securing the LaFountain Loan was lost at a tax sale, and the LaFountain Loan became unsecured.

120.    Accumatch's failure to pay the taxes for the LaFountain Property was a breach of the Agreement.

121.    As a result of Accumatch's breach of contract, Statebridge sustained losses and has been harmed and damaged in an amount to be proven at trial.

122.    Statebridge provided notice to Accumatch of the losses sustained as a result of the loss of title to the LaFountain Property and requested payment sufficient to indemnify Statebridge for the loss of the LaFountain Property.

123.    Flat Rock has demanded just over $96,000 in losses due to the non-payment of the taxes due for the LaFountain Property.

**Reimbursement of Expenses and Penalties**

124.    During the term of the Agreement, Accumatch has made other errors and has failed to comply with its obligation under the Agreement, including making sure that the Accumatch correctly and timely pays the property taxes due on the real estate that secures each loan serviced by Accumatch per the Agreement.

125.    The loans and losses are itemized on **Exhibit 2**, attached hereto.

## CLAIM FOR RELIEF
### (Breach of Contract)

126.    Plaintiff Statebridge Company, LLC incorporates the allegations contained in paragraphs 1 through 125.

127.    As set forth above, Accumatch breached its Agreement with Statebridge by failing to disburse funds and to pay property taxes for the Smith Property, the Pineneedle Property, LaFountain Property, and for the loans and properties itemized on **Exhibit 2**.

128.    As a result of Accumatch's breach of the Agreement, Statebridge has been injured, and has sustained losses and damages, in an amount to be proven at trial.

129.    Accumatch is obligated to indemnify Statebridge has failed and refused to do so, resulting in damages to Statebridge.

**WHEREFORE**, Plaintiff Statebridge Company, LLC requests the entry of judgment in its favor and against Martin-Powell, LLC, doing business as Accumatch for the amount of damages sustained because of Martin-Powell, LLC, doing business as Accumatch's breach of the Agreement, for costs, interest, and such other relief as the Court deems proper.

Dated this 27th day of July, 2018.

FOSTER GRAHAM MILSTEIN &
 CALISHER LLP

*Duly signed original on file at the offices of Foster
 Graham Milstein & Calisher LLP*

By:_____*/s/ Michael G. Milstein*_____
     Michael G. Milstein, Reg. No. 23833

Attorneys for Plaintiff Statebridge Company, LLC

<u>Plaintiff's Address and Telephone Number</u>:

Statebridge Company, LLC
5680 Greenwood Plaza Blvd., Suite 100 South
Greenwood Village, Colorado 80111
Tel. No. 303-962-6753



## Property Tax Intelligence Service Agreement

This Agreement is entered into between Martin-Powell, LLC d/b/a Accumatch ("Accumatch") and Statebridge Company, LLC ("Client" or "Servicer") (Accumatch and Client shall be referred to collectively hereafter as the "Parties") on this the 23rd day of January, 2015 ("Effective Date") and shall be effective upon execution.

1.    Services Provided.  Accumatch shall provide the following tax related services for Client on each loan for which Accumatch is hired to provide such services:

> A.    Tax Payment Processing Service (TPS):  Accumatch will perform a tax payment service on any loan under service with Accumatch on behalf of Client. Under no circumstance will Accumatch advance funds of any type for Client, including refunds due as a result of a mistake made by Accumatch. In order for Accumatch to make proper payments to taxing authorities, Client must approve and fund for applicable property tax obligations based on the required return dates established by Accumatch. If Client cannot meet this requirement Client will elect to pay the taxes directly to any applicable taxing agency. In order for Client to fund tax payments in a timely manner, unless delayed by the collector due to late bill releases or disputed tax amount, Accumatch shall provide Client the applicable tax amounts at least ten (10) business days prior to the economic loss date (ELD). Accumatch takes advantage of all available discount due dates.
>
> Furthermore, Accumatch shall assume responsibility for sending appropriate property tax payments and appropriate backup information required to remit applicable tax payments to the appropriate taxing authorities. In the event there is any payment processing related research required where Accumatch remitted a payment, this research will be conducted by Accumatch. Should any taxing authority require a payment media other than normally submitted by Accumatch, Accumatch will notify Client in writing advising of resulting fees and gain Client's written authorization to proceed and resulting fees shall be borne by Client. No funds will be advanced by Accumatch.
>
> B.    Tax Amount Reporting Service (C-Track):  Provide Client with actual ad valorem tax amounts for each property for the next tax installment as provided by each taxing authority. Accumatch will also provide Client with delinquent tax payment status information on each property as tax cycle due dates pass with follow-ups on a monthly basis after posting of the delinquent status, if any, by the taxing authority.
>
> C.    Delinquency Tracking Service (D-Track):  Provide Client with delinquent tax payment status information on each property as tax cycle due dates pass with follow-ups on a monthly basis after posting of the delinquent status, if any, by the taxing authority.

**EXHIBIT 1**



D. Back-Tax Reporting: Separate and apart from a request for C-Track or D-Track Services, Client may require Back-Tax research and Accumatch will perform an on-demand search for delinquent taxes for the specifically-related Property. Accumatch will report the results of its search, including information obtained regarding the delinquency status, any related penalties and interest, tax sales, or payment plans, pertaining to all ad valorem taxes and redemption amounts "good through" the end of the current month and the end of the following month, if provided by Agency. Back-Tax results will be delivered to Client within thirty (0) business days based on the volume and characteristics of the applicable Loans and subject to the limitations of information availability from Agencies. If an Agency does not respond within the mutually agreed-upon time frame, Accumatch will keep Client informed of its efforts and progress. Unless specifically requested by Client, upon the completion of the respective Back-Tax research for a Back-Tax order, Accumatch shall have no obligation to perform additional services. Notwithstanding the foregoing, at Client's request Accumatch shall provide a Back-Tax report to Client on new loan boards for the fees included in paragraph 3.

E. Customer Service: Accumatch will promptly research and respond, within 2 business days, to all Client inquiries concerning property tax matters affecting loans under service by Accumatch. Client's requests will be processed and delivered in the order in which they are received, subject to the availability of information from the specific applicable taxing authority. Any limitations in relation to availability from the taxing authority will be communicated to SERVICER within 2 business days of receipt of the inquiry. In the event the SERVICER identifies the inquiry as requiring immediate response due to exigent circumstances, Accumatch agrees to respond within 24 hours. Client will also have direct phone access to COO, CTO, and CEO in the event they feel instant attention is necessary.

2.    Loan Information Required.  In order to permit Accumatch to provide the services described in Paragraph No. 1, Client must provide the following information on each loan assigned to Accumatch:

A. Loan Number;

B. Borrower's Name;

C. The Tax Identification Number assigned by each taxing authority for each parcel of property associated with each loan (where available); and,

D. Street address for the property.

E. Access to the Servicer's online imagining system

Accumatch will first look to retrieve all relevant information from the Client's SCI system. In the event the information is still not available, Accumatch reserves the right to request, and Client agrees to provide upon request, the following additional information:

PROPERTY TAX INTELLIGENCE SERVICE AGREEMENT - - PAGE 2

EXHIBIT 1



A. Copies of a recorded deed with the appropriate file mark, page and book number or document number; and,

B. The legal description for a property.

Client agrees to provide the aforementioned loan information in a digital format, when available, that may be accessed by Accumatch. Client further agrees that it shall provide all new loan information to Accumatch within forty-five (45) days of receipt by Client. Accumatch will, upon receipt of the loan information from its investor client, within five (5) business days, perform a review of information and if there is a reasonable belief that information is inaccurate or insufficient, Accumatch will notify Client of same within two (2) business days of the review. In the event that data provided to Accumatch is corrupted or cannot be accessed by Accumatch, Accumatch will promptly notify Client and the Parties agree that Accumatch will not be responsible for the loans assigned until the issue has been resolved to Accumatch's reasonable satisfaction.

3. Fee for Services.
    A. All Property Tax Services:

| | | |
|---|---|---|
| i. | Property Tax Monitoring and Escrow Payments : | **$2.05** per loan per month |
| ii. | Implementation/Integration and Clean up: | **$75,000** One-time |
| iii. | Delinquent Letter Service: | **$3.00** per Letter |
| iv. | Tax Status Due Diligence: | **$10.00** per parcel |
| v. | Prior Year Redemptions: | **$15.00** per certificate |

4. Payment for Services. Client agrees to pay 25% ($18,750) of the Integration and Clean-Up Fee within 15 days of the effective date of the contract. The remaining 75% balance of the Integration and Clean-Up Fee, ($56,250) will be paid upon mutually agreed upon successful completion of the integration. Beginning March 1st, for the service period February 1-28, 2015, Accumatch shall provide an invoice to Client on the first (1st) week of each month for the loans assigned to Accumatch in the prior month. All invoices are due and Client agrees to pay within forty five (45) days of the date of each invoice. In addition to the Fee for Services, Client agrees to pay any additional expenses for fees incurred by Accumatch that are charged by taxing authorities or tax collectors to obtain tax amounts, request tax payment verification or to request copies of tax bills (Copies of payments made to any taxing authority or tax collector that have been paid by Accumatch will be made available to Client with invoices).

5. Integration

During the Integration project, both parties will provide two dedicated subject matter experts, one for operations and one for IT integration, for review and approval of project deliverables and a single point of contact for their area of responsibility to aide in the coordination of all project activities. The parties

EXHIBIT 1



shall schedule weekly status meetings to review the project plan and to discuss any issues. The scope of the Integration project deliverables shall be set out in a separate Project Implementation Plan to be agreed upon by both parties. The Project Implementation Plan will be discussed in person and presented in writing by Accumatch within 10 days of the effective date of this contract. Accumatch will notify Client in writing at completion of the Integration.  Client has fourteen (14) business days after two full tax cycles subsequent to notification to either accept completion of the project or submit requested changes in writing.       Additional requests may not delay the acceptance of completion of the agreed upon Project Implementation Plan as it relates to the payment of the remaining balance of the Integration and Clean-Up fee.  Project Assumptions:

- Development will not begin until functional specifications have been presented in writing via a Project Implementation Plan, approved, and signed by both parties.
- The scope of the Project Implementation Plan will not exceed 75 days. Resources from both parties will be dedicated to the meeting all core functional requirements within 75 days. Both parties agree there may be some features that are not considered core functional requirements that may fall outside of the 75 day implementation.
- All inbound and outbound files will be handled via a secure internet file transfer protocol, including encryption found in existing encrypted email tunnel.
- All files will be tested in a user test area by both parties.
- Accumatch will provide Operational and IT Integration support onsite for the Client as mutually agreed upon and within 72 hours of being requested by Client.  An agenda will be agreed to by both parties prior to providing to onsite support.

6.      Term.  This Agreement shall commence upon receipt of the takeover file of existing loans or on the date hereof, whichever is later, and shall continue until either party terminates, with or without cause, effective upon 60 days written notice to the other party, or upon mutual agreement of the Parties.

7.      Termination of Agreement. Upon termination, for any reason, of this Agreement, Accumatch will provide Client with a complete portfolio of all loans serviced by Accumatch. All Client's data will then be deleted from Accumatch's records, and Accumatch agrees to permit the Client's Information Technology team to perform on-site or remote validation that data has been permanently disposed of in accordance with Client's requirements.


8.      Confidentiality.   Accumatch agrees that all data provided by Client to it shall be kept confidential in accordance with the Gramm-Leach-Bliley Act. Upon request by Client, Accumatch will sign a Client specific confidentiality and/or non-disclosure agreement regarding Client's data provided to Accumatch. Reports will be delivered to Client in an encrypted archive (zip) format with password protection, or via an alternative secure transmission as agreed to by the Parties in writing.

"Confidential Information" shall mean the information of a Party, which information is conspicuously marked with "Confidential," or "Proprietary" or other similar legend. Confidential Information shall also include all "non-public personal information" as defined in Title V of the Gramm-Leach-

PROPERTY TAX INTELLIGENCE SERVICE AGREEMENT - - PAGE 4

EXHIBIT 1



Bliley Act (15 U.S.C. Section 6801 et seq.) and its implementing regulations (collectively, the "GLB Act"), as the same may be amended from time to time, that a party receives from or at the direction of the other party and that concerns any of Client's "customers" and/or "consumers" (as defined in the GLB Act). If Confidential Information is orally disclosed it shall be identified as such at the time of disclosure and a brief written non-confidential description of the information and confirmation of the confidential nature of the information shall be sent to the recipient within thirty (30) days after the disclosure. Quantities, schedules and pricing shall be considered Confidential Information hereunder whether disclosed orally or in writing, or whether or not marked "Confidential" or "Proprietary." Confidential Information does not include information that: (1) was in the possession of, or was known by, the receiving Party prior to its receipt from the disclosing Party, without an obligation to maintain its confidentiality; (2) is or becomes generally known to the public without violation of this Agreement; (3) is obtained by the receiving Party from a third Party, without an obligation to keep such information confidential; or (4) is independently developed by the receiving Party without use of Confidential Information.

Upon termination of this Agreement by either Party, each Party shall, as soon as commercially practicable upon being requested in writing to do so by the requesting Party, return all originals and copies of Confidential Information or destroy the same with certification of destruction, provided that the either Party may retain an archival copy of the other Party's Confidential Information as required by record retention policies or law.

9.    Liability.  The liability of Accumatch is strictly limited to those liabilities arising from its failure to perform the services described in this Agreement. Except as specifically stated, Accumatch and its affiliates, officers, directors, shareholders, employees, agents, successors or assigns are not liable for any indirect, special or incidental or consequential damages of any kind (including, but not limited to, loss of profits, interest, earnings or use) whether arising in contract, tort or otherwise, for the following: (i) any damages and/or losses resulting from inaccurate or incomplete data provided by Client or its previous tax service vendor; (ii) errors attributed to changes in the taxing authority's assessment data made after Accumatch enters the loan information into its system and for which Accumatch does not receive written or electronic notice from Client, including property address changes, legal description changes, split parcels and inactivated parcels; (iii) any losses in excess of the lesser of the total amount due on the mortgage, the value of the property, or the purchase price of the loan by the investor; (iv) any losses that occurred prior to the set-up completion date onto the Accumatch system; and, (v) on any property where Accumatch presented delinquent taxes to the client and no action was taken at the time delinquent taxes were originally identified.

All claims from Client must be presented in writing to Accumatch and must identify the specific loan along with a copy of the most recent tax bill or statement issued since the error was discovered, or other proof if a tax bill or statement is not available. All claims must be presented within 30 days of discovery by Client. In no event shall a claim be presented after Client terminates this Agreement without cause, Furthermore, the latest any claim may be presented is the later of the next tax installment

**EXHIBIT 1**

accumatch
PROPERTY TAX INTELLIGENCE

due date for the property to which the error is attributable or within six (6) months of the date the error was committed by Accumatch.

Accumatch agrees to maintain errors and omissions coverage of no less than $5,000,000 in coverage. Accumatch agrees to provide a copy of the related policy to Client within 15 days of execution of this Agreement and at any time upon Client's written request.

10.    Entire Agreement.  This Agreement is the entire agreement of the Parties and supersedes any prior agreements between them, whether written or oral, with respect to the subject matter hereof. No waiver, alteration, or modification of any of the provisions of this Agreement shall be binding unless in writing and signed by duly authorized representatives of the parties hereto.  The Parties expressly acknowledge that they are not relying on any representations, written or oral, which are not expressly contained in this Agreement.

11.  Choice Of Law, Venue And Jurisdiction. The Parties agree that the proper venue for any dispute arising out of this agreement shall be Denver County, Colorado and  that Colorado law shall apply.

12.  Severability. If any portion of this Agreement shall be determined by a court of law to be invalid or unenforceable, that portion shall be stricken from the Agreement and the remaining terms shall at all times remain in full force and effect.

13.    Indemnity. The Parties shall indemnify each other against any and all claims hereafter brought or asserted by any third party as a result of a claim arising out of or attributable, directly or indirectly, (1) to the performance or nonperformance of any services for or on behalf of Accumatch to Client (2) otherwise in connection with this Agreement, but only inasmuch as the claim is attributable to an error on the part of the indemnifying party.  Such indemnification obligation shall be conditioned upon the Parties promptly notifying each other of any such claim.  Such indemnification shall include reasonable attorneys' fees and other costs incurred by the Parties in the defense of any claim; provided, however, each Party shall have the right to defend any claim with its own counsel, which is reasonably acceptable to the other Party.  The Parties shall not enter into any settlement that affects the other Party's rights or interests without the other Party's prior written approval.  The Parties shall have no authority to settle any claim on behalf of the other Party.

**EXHIBIT 1**



14.   This Agreement may be executed in multiple subparts.

**AGREED AND ACCEPTED:**

**MARTIN-POWELL, LLC dba ACCUMATCH**

By: _____

Printed Name: Aaron Anderson

Title: CEO

Date: 1/23/2015

**Statebridge Company, LLC**

By: _____

Printed Name: David McDonne II

Title: Managing Director

Date: 1/23/2015

PROPERTY TAX INTELLIGENCE SERVICE AGREEMENT - - PAGE 7

**EXHIBIT 1**

| Loan Number | Issue Type | Financial Loss |
|---|---|---|
| 16717 | Paid Multiple Units | |
| 18858 | Unpaid Taxes | $1,733.15 |
| 23090 | Wrong Parcel Paid | $2,144.72 |
| 23246 | Wrong Parcel Paid | $423.78 |
| 23394 | Wrong Parcel Paid | |
| 23413 | Wrong Parcel Paid | |
| 23990 | Wrong Parcel Paid | $506.87 |
| 25195 | Service Transferred-Penalties and Interest | |
| 26568 | Wrong Parcel Paid | $65.34 |
| 27888 | Double Tax Payment | $3,282.60 |
| 29740 | Wrong Parcel Paid | |
| 29851 | Wrong Parcel Paid | $4,792.00 |
| 30071 | Unpaid Taxes | $36.20 |
| 30092 | Unpaid Taxes | $87.47 |
| 30394 | Unpaid Taxes | |
| 30445 | Unpaid Taxes | |
| 30488 | No Tax Payment Made Funds Remitted | $27.58 |
| 30770 | Unpaid Taxes | $65.28 |
| 30896 | Unpaid Taxes | $104.45 |
| 31863 | Unpaid Taxes | $398.33 |
| 32069 | Unpaid Taxes | $3.80 |
| 32111 | Unpaid Taxes | $5.70 |
| 32127 | Unpaid Taxes | $346.71 |
| 32321 | Unpaid Taxes | $346.71 |
| 32697 | Unpaid Taxes | $76.28 |
| 33013 | Unpaid Taxes | $184.32 |
| 33017 | Unpaid Taxes | |
| 33107 | Unpaid Taxes | $251.55 |
| 33110 | No Tax Payment Made Funds Remitted | $899.43 |
| 33241 | Wrong Parcel Paid | $1,542.25 |
| 33241 | Wrong Parcel Paid | $890.45 |
| 34224 | Unpaid Taxes | $1,915.19 |
| 34245 | Unpaid Taxes | $140.68 |
| 34414 | Unpaid Taxes | $779.82 |
| 34469 | Late Tax Payment | $73.42 |
| 34929 | Unpaid Taxes | $19.20 |
| 35208 | Unpaid Taxes | $1,644.84 |
| 36111 | Wrong Parcel Paid | $125.05 |
| 36209 | Unpaid Taxes | $118.35 |
| 36792 | Unpaid Taxes | |
| 37075 | Unpaid Taxes | $27.67 |
| 37227 | Wrong Parcel Paid | $863.17 |
| 38073 | Unpaid Taxes | $146.94 |
| 38332 | Unpaid Taxes | $14.38 |
| 38424 | Unpaid Taxes | $88.66 |
| 38539 | Unpaid Taxes | |
| 39699 | Unpaid Taxes | $50.05 |
| 39979 | Wrong Parcel Paid | $1,198.91 |
| 40054 | Wrong Parcel Paid | $6,279.25 |
| 40306 | Wrong Parcel Paid | $3,036.71 |
| 40496 | Unpaid Taxes | $175.14 |
| 40844 | Prior servicer paid taxes | $4,869.65 |
| 29996 | Double Tax Payment | $4,576.54 |
| 29117 | Unpaid Taxes | $647.10 |
| 22371 | Unpaid Taxes | $587.56 |
| 22626 | Unpaid Taxes | $1,139.92 |
| 41181 | Unpaid Taxes | $41.72 |
| 29214 | Unpaid Taxes | $1,242.19 |
| 22626 | Unpaid Taxes | $1,139.92 |
| 40491 | Unpaid Taxes | $265.33 |
| 36514 | Unpaid Taxes | $153.53 |
| 34969 | Unpaid Taxes | $127.13 |
| 27547 | Unpaid Taxes | $5,269.63 |
| | | $54,972.62 |

DATE FILED: July 27, 2018 2:14 PM
FILING ID: D4DB279122600
CASE NUMBER: 2018CV32788

**EXHIBIT 2**

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Loan | Batch | Penalty Amount | Responsibility | Reason |
| 2 | 29128 | 11011 | $ 134.88 | Accumatch | Did not present prior to the due date |
| 3 | 22010 | 11089 | $ 773.35 | Accumatch | Did not present the full amount when it was due. |
| 4 | 33028 | 11140 | $ 61.38 | Accumatch | Did not present prior to the due date |
| 5 | 13978 | 11162 | $ 21.34 | Accumatch | Did not present prior to the due date |
| 6 | 13978 | 11162 | $ 17.32 | Accumatch | Did not present prior to the due date |
| 7 | 13924 | 11220 | $ 237.27 | Accumatch | Did not present prior to the due date |
| 8 | 22580 | 11264 | $ 328.26 | Accumatch | SB paid tax and penalty, then county issued refund for full amount paid.  Accumatch refunded only tax portion, did not refund penalty. |
| 9 | 24162 | 11292 | $ 40.35 | Accumatch | Did not present the full amount when it was due. |
| 10 | 24162 | 11292 | $ 40.67 | Accumatch | Did not present the full amount when it was due. |
| 11 | 24162 | 11292 | $ 41.60 | Accumatch | Did not present the full amount when it was due. |
| 12 | 24162 | 11292 | $ 69.63 | Accumatch | Did not present the full amount when it was due. |
| 13 | 24162 | 11292 | $ 41.36 | Accumatch | Did not present the full amount when it was due. |
| 14 | 22345 | 11297 | $ 132.35 | Accumatch | Did not present the full amount when it was due. |
| 15 | 38029 | 11346 | $ 291.84 | Accumatch | Did not present prior to the due date |
| 16 | 24162 | 11344 | $ 51.29 | Accumatch | Did not present prior to the due date |
| 17 | 24162 | 11344 | $ 41.16 | Accumatch | Did not present prior to the due date |
| 18 | 24162 | 11344 | $ 42.76 | Accumatch | Did not present prior to the due date |
| 19 | 24162 | 11344 | $ 41.51 | Accumatch | Did not present prior to the due date |
| 20 | 24162 | 11344 | $ 42.27 | Accumatch | Did not present prior to the due date |
| 21 | 24162 | 11344 | $ 41.61 | Accumatch | Did not present prior to the due date |
| 22 | 24162 | 11344 | $ 41.43 | Accumatch | Did not present prior to the due date |
| 23 | 24162 | 11344 | $ 43.02 | Accumatch | Did not present prior to the due date |
| 24 | 24162 | 11344 | $ 41.42 | Accumatch | Did not present prior to the due date |
| 25 | 24162 | 11344 | $ 49.19 | Accumatch | Did not present prior to the due date |
| 26 | 24162 | 11344 | $ 50.89 | Accumatch | Did not present prior to the due date |
| 27 | 24162 | 11344 | $ 53.64 | Accumatch | Did not present prior to the due date |
| 28 | 24162 | 11344 | $ 51.29 | Accumatch | Did not present prior to the due date |
| 29 | 24162 | 11344 | $ 52.79 | Accumatch | Did not present prior to the due date |
| 30 | 24162 | 11344 | $ 52.64 | Accumatch | Did not present prior to the due date |
| 31 | 24162 | 11344 | $ 52.13 | Accumatch | Did not present prior to the due date |
| 32 | 24162 | 11344 | $ 53.04 | Accumatch | Did not present prior to the due date |
| 33 | 24162 | 11344 | $ 52.23 | Accumatch | Did not present prior to the due date |
| 34 | 24162 | 11344 | $ 52.48 | Accumatch | Did not present prior to the due date |

EXHIBIT 2

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Loan | Batch | Penalty Amount | Responsibility | Reason |
| 35 | 24162 | 11344 | $ 53.64 | Accumatch | Did not present prior to the due date |
| 36 | 39044 | 11348 | $ 32.05 | Accumatch | Did not present prior to the due date |
| 37 | 29652 | 11368 | $ 7.94 | Accumatch | Did not present the full amount when it was due. |
| 38 | 26612 | 11435 | $ 24.72 | Accumatch | Did not present prior to due date |
| 39 | 1042 | 11545 | $ 278.18 | Accumatch | Did not present prior to due date. |
| 40 | 24157 | 11572 | $ 298.89 | Accumatch | Did not present prior to due date. |
| 41 | 24157 | 11572 | $ 298.89 | Accumatch | Did not present prior to due date. |
| 42 | 24157 | 11572 | $ 298.89 | Accumatch | Did not present prior to due date. |
| 43 | 26588 | 11590 | $ 537.14 | Accumatch | Did not present prior to due date. |
| 44 | 24162 | 11344 | $ 51.97 | Accumatch | Did not present prior to the due date |
| 45 | 24162 | 11344 | $ 52.39 | Accumatch | Did not present prior to the due date |
| 46 | 24162 | 11344 | $ 52.23 | Accumatch | Did not present prior to the due date |
| 47 | 24162 | 11344 | $ 52.89 | Accumatch | Did not present prior to the due date |
| 48 | 24162 | 11344 | $ 55.05 | Accumatch | Did not present prior to the due date |
| 49 | 24162 | 11344 | $ 52.29 | Accumatch | Did not present prior to the due date |
| 50 | 24162 | 11344 | $ 53.40 | Accumatch | Did not present prior to the due date |
| 51 | 24162 | 11344 | $ 50.64 | Accumatch | Did not present prior to the due date |
| 52 | 24162 | 11344 | $ 52.39 | Accumatch | Did not present prior to the due date |
| 53 | 24162 | 11344 | $ 53.23 | Accumatch | Did not present prior to the due date |
| 54 | 24162 | 11344 | $ 51.72 | Accumatch | Did not present prior to the due date |
| 55 | 24162 | 11344 | $ 52.64 | Accumatch | Did not present prior to the due date |
| 56 | 24162 | 11344 | $ 51.98 | Accumatch | Did not present prior to the due date |
| 57 | 24162 | 11344 | $ 52.14 | Accumatch | Did not present prior to the due date |
| 58 | 24162 | 11344 | $ 53.04 | Accumatch | Did not present prior to the due date |
| 59 | 24162 | 11344 | $ 52.39 | Accumatch | Did not present prior to the due date |
| 60 | 24162 | 11344 | $ 52.23 | Accumatch | Did not present prior to the due date |
| 61 | 24162 | 11344 | $ 52.23 | Accumatch | Did not present prior to the due date |
| 62 | 24162 | 11344 | $ 52.99 | Accumatch | Did not present prior to the due date |
| 63 | 24162 | 11344 | $ 53.04 | Accumatch | Did not present prior to the due date |
| 64 | 24162 | 11344 | $ 69.53 | Accumatch | Did not present prior to the due date |
| 65 | 24162 | 11344 | $ 43.11 | Accumatch | Did not present prior to the due date |
| 66 | 24162 | 11344 | $ 42.42 | Accumatch | Did not present prior to the due date |
| 67 | 24162 | 11344 | $ 39.85 | Accumatch | Did not present prior to the due date |
| 68 | 24162 | 11344 | $ 51.89 | Accumatch | Did not present prior to the due date |
| 69 | 24162 | 11344 | $ 53.29 | Accumatch | Did not present prior to the due date |
| 70 | 24162 | 11344 | $ 51.04 | Accumatch | Did not present prior to the due date |
| 71 | 24162 | 11344 | $ 51.72 | Accumatch | Did not present prior to the due date |
| 72 | 24162 | 11344 | $ 52.54 | Accumatch | Did not present prior to the due date |
| 73 | 24162 | 11344 | $ 51.53 | Accumatch | Did not present prior to the due date |
| 74 | 24162 | 11344 | $ 52.89 | Accumatch | Did not present prior to the due date |
| 75 | 24162 | 11344 | $ 51.13 | Accumatch | Did not present prior to the due date |
| 76 | 24162 | 11344 | $ 51.64 | Accumatch | Did not present prior to the due date |

**EXHIBIT 2**

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Loan | Batch | Penalty Amount | Responsibility | Reason |
| 77 | 24162 | 11344 | $ 52.14 | Accumatch | Did not present prior to the due date |
| 78 | 24162 | 11344 | $ 51.29 | Accumatch | Did not present prior to the due date |
| 79 | 24162 | 11344 | $ 52.04 | Accumatch | Did not present prior to the due date |
| 80 | 24162 | 11344 | $ 43.87 | Accumatch | Did not present prior to the due date |
| 81 | 24162 | 11344 | $ 36.41 | Accumatch | Did not present prior to the due date |
| 82 | 24162 | 11344 | $ 36.75 | Accumatch | Did not present prior to the due date |
| 83 | 24162 | 11344 | $ 38.36 | Accumatch | Did not present prior to the due date |
| 84 | 24162 | 11344 | $ 37.25 | Accumatch | Did not present prior to the due date |
| 85 | 24162 | 11344 | $ 38.60 | Accumatch | Did not present prior to the due date |
| 86 | 24162 | 11344 | $ 38.85 | Accumatch | Did not present prior to the due date |
| 87 | 24162 | 11344 | $ 39.35 | Accumatch | Did not present prior to the due date |
| 88 | 24162 | 11344 | $ 39.16 | Accumatch | Did not present prior to the due date |
| 89 | 24162 | 11344 | $ 39.51 | Accumatch | Did not present prior to the due date |
| 90 | 24162 | 11344 | $ 40.92 | Accumatch | Did not present prior to the due date |
| 91 | 24162 | 11344 | $ 41.35 | Accumatch | Did not present prior to the due date |
| 92 | 23006 | 11714 | $ 105.28 | Accumatch | Did not present prior to the due date |
| 93 | 35971 | 11856 | $ 54.40 | Accumatch | Did not present prior to the due date |
| 94 | 25399 | 11888 | $ 33.18 | Accumatch | Did not present prior to the due date |
| 95 | 30640 | 11867 | $ 88.73 | Accumatch | Did not present prior to the due date |
| 96 | 36719 | 11867 | $ 100.97 | Accumatch | Did not present prior to the due date |
| 97 | 34319 | 11867 | $ 6.62 | Accumatch | Did not present prior to the due date |
| 98 | 37226 | 11867 | $ 12.95 | Accumatch | Did not present prior to the due date |
| 99 | 37314 | 11867 | $ 18.92 | Accumatch | Did not present prior to the due date |
| 100 | 20452 | 11889 | $ 10.28 | Accumatch | Did not present prior to the due date |
| 101 | 24157 | 11989 | $ 1,042.20 | Accumatch | Original batch errored, Accumatch did not reach out to us until 8 days after funding on 7/18. New batch not presented until 8/31. |
| 102 | 27581 | 11989 | $ 889.32 | Accumatch | Original batch errored, Accumatch did not reach out to us until 8 days after funding on 7/18. New batch not presented until 8/31. |
| 103 | 28693 | 11989 | $ 61.64 | Accumatch | Original batch errored, Accumatch did not reach out to us until 8 days after funding on 7/18. New batch not presented until 8/31. |

EXHIBIT 2

|  | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | **Loan** | **Batch** | **Penalty Amount** | **Responsibility** | **Reason** |
| 104 | 26509 | 11989 | $ 469.52 | Accumatch | Original batch errored, Accumatch did not reach out to us until 8 days after funding on 7/18. New batch not presented until 8/31. |
| 105 | 22841 | 11986 | $ 253.49 | Accumatch | Not tracking city taxes, only county |
| 106 | 39783 | 11986 | $ 55.14 | Accumatch | Did not present prior to the due date. |
| 107 | 15065 | 12020 | $ 11.74 | Accumatch | 2016 4th installment was not paid in full when due, causing penalty to occur. |
| 108 | 29169 | 12019 | $ 75.48 | Accumatch | Original pmt was due 1/1/2017 but was not presented prior to that date. |
| 109 | 30530 | 12088 | $ 38.49 | Accumatch | Did not present prior to the due date. |
| 110 | 24718 | 12097 | $ 116.96 | Accumatch | Did not present prior to the due date. |
| 111 | 26281 | 12098 | $ 4.29 | Accumatch | Did not present prior to the due date. |
| 112 | 37612 | 12145 | $ 54.21 | Accumatch | Did not present prior to the due date. |
| 113 | 34959 | 12203 | $ 17.51 | Accumatch | Did not present prior to the due date. |
| 114 | 33958 | 12170 | $ 107.26 | Accumatch | Per Arkansas law, mortgage companies must pay by 05/01; (60 days from bill release), or have 10% penalty added to bill. Accumatch was not aware of this law. |
| 115 | 35988 | 12170 | $ 22.85 | Accumatch | Did not present prior to the due date. |
| 116 | 33796 | 12202 | $ 47.29 | Accumatch | We did report the one installment of 525.47 due for the full year. The amount was incorrect as we only reported one installment amount for: (1/1) It should have had the full year amount. Missed 2nd inst. reporting. FULL AMT. DUE 9/29/17. |

**EXHIBIT 2**

|  | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | **Loan** | **Batch** | **Penalty Amount** | **Responsibility** | **Reason** |
| 117 | 34728 | 12202 | $ 121.91 | Accumatch | We did report the one installment of 1354.54 due for the full year. The amount was incorrect as we only reported one installment amount for: (1/1) It should have had the full year amount. Missed 2nd inst. reporting. FULL AMT. DUE 9/29/17. $4185.56 w. P&I from 2nd installment. |
| 118 | 34757 | 12242 | $ 17.29 | Accumatch | Did not present prior to the due date |
| 119 | 30920 | 12242 | $ 104.58 | Accumatch | Did not present prior to the due date |
| 120 | 29843 | 12298 | $ 95.57 | Accumatch | Did not present prior to the due date |
| 121 | 36136 | 12309 | $ 21.14 | Accumatch | Did not present prior to the due date |
| 122 | 25399 | 12462 | $ 19.25 | Accumatch | Did not present prior to the due date |
| 123 | 23201 | 13613 | $ 152.18 | Accumatch | Presented the wrong amount |
| 124 | 34949 | 13933 | $ 78.08 | Accumatch | Did not present prior to the due date |
| 125 | 37690 | 14048 | $ 89.21 | Accumatch | Did not present prior to the due date |
| 126 | 38282 | 14048 | $ 98.87 | Accumatch | Did not present prior to the due date |
| 127 | 31347 | 14094 | $ 373.38 | Accumatch | Did not present prior to the due date |
| 128 | 25525 | 14266 | $ 414.68 | Accumatch | Did not present prior to the due date |
| 129 | 34562 | 14213 | $ 19.05 | Accumatch | Did not present prior to the due date |
| 130 | 29740 | 14319 | $ 94.11 | Accumatch | Did not present prior to the due date |
| 131 | 29743 | 14342 | $ 150.29 | Accumatch | Did not present prior to the due date |
| 132 | 39704 | 14438 | $ 39.91 | Accumatch | Did not present prior to the due date |
| 133 |  | **Total** | **$ 12,896.26** |  |  |

**EXHIBIT 2**