| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202<br>720-865-8301 | DATE FILED: July 27, 2018 2:14 PM<br>FILING ID: D4DB279122600<br>CASE NUMBER: 2018CV32788 |
| Plaintiff: Statebridge Company, LLC<br><br>v.<br><br>Defendant: Martin-Powell, LLC, doing business as Accumatch | **COURT USE ONLY** |
| Michael G. Milstein<br>Foster Graham Milstein & Calisher LLP<br>360 S. Garfield Street, 6th Floor<br>Denver, CO  80209<br>Phone: (303)333-9810<br>Fax: (303)333-9786<br>Email:  michael@fostergraham.com;<br>Atty. Reg. Nos.:  23833 | Case Number:<br><br>Courtroom: |
| **COMPLAINT** | |

Plaintiff, Statebridge Company, LLC, by its attorneys, Foster Graham Milstein & Calisher LLP, sets forth its Complaint against Martin-Powell, LLC, doing business as Accumatch (hereinafter "Defendant" or "Accumatch") as follows:

**PARTIES AND VENUE**

1.      Plaintiff Statebridge Company, LLC ("Statebridge") is a Colorado limited liability company with its principal place of business located at 5680 Greenwood Plaza Blvd., Suite 100S, Greenwood Village, Colorado, 80111.

2.      Defendant Martin-Powell, LLC is a Texas limited liability company with its principal address located at 2711 LBJ Freeway, Suite 1065, Dallas, Texas, 75234.

3.      Defendant conducts business in Colorado using the tradename "Accumatch."

4.      Defendant's registered agent is Brad A. Martin, 2711 LBJ Freeway, Suite 1065, Dallas, Texas, 75234.  Brad A. Martin is also an officer of Defendant.

5. Although Accumatch is a non-resident of Colorado, this Court has personal jurisdiction over Accumatch because Accumatch has transacted business with Statebridge in the state of Colorado.

6. Venue is proper in the City and County of Denver because Defendant does not reside in Colorado, and Denver is the County designated in the Complaint. Further, the parties agreed in their written contract that the proper venue for any dispute arising out of their agreement shall be Denver County, Colorado.

**GENERAL ALLEGATIONS**

7. Statebridge's principal business is servicing loans in the mortgage industry. Statebridge enters into servicing contracts with mortgage holders and "services" the loans by performing tasks as the agent and/or contractor for the lender, such as collecting payments from the borrowers and paying property taxes related to the real property that secures each loan.

8. Accumatch is in the business of providing tax-payment processing services and tax matching services to lenders and loan servicers, like Statebridge. Accumatch's business involves making sure that a mortgage servicer, like Statebridge, correctly and timely pays the property taxes due on real property that secure loans serviced by the loan servicer.

9. Accumatch holds itself out as having decades of expertise in the real estate tax service industry and claims that Accumatch is the leading provider of advanced matching and database technology within said industry.

10. The importance of Accumatch's duties and services to Statebridge is underscored by the risk of loss to collateral securing a loan (in most cases, the collateral is real property) if the property taxes are not paid through Accumatch's services. If there is loss of collateral from non-payment of taxes, the resulting loss is a loan becoming unsecured or under-secured, or (in cases where the lender also has title) the inability to sell the property to the borrower at the end of the loan term, thereby causing harm and damages to the lenders and others.

11. On or about January 23, 2015, Statebridge and Accumatch entered into a "*Property Tax Intelligence Services Agreement*" (hereinafter referred to as the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

12. Pursuant to the Agreement, Accumatch agreed (among other things) to provide tax payment services on loans serviced by Statebridge.

13. As part of the Agreement, Accumatch was responsible for sending the appropriate property tax payments and the appropriate back up information to remit applicable tax payments to the appropriate taxing authorities for each loan serviced by Statebridge and assigned to Accumatch under the Agreement for tax services.

14. According to the Agreement, in order for Accumatch to provide services to Statebridge under the Agreement, Statebridge must provide Accumatch with access to Statebridge's online imaging system. See **Exhibit 1**, Section 2(E).

15. Statebridge's online imaging system is called Security Connections Incorporated ("SCI") and referred to in the Agreement as Statebridge's "SCI system." **Exhibit 1**, Section 2.

16. The SCI system is the database that, among other things, contains the electronic records related to each loan served by Statebridge, including images of the loan documents, such as the note and deed of trust.

17. According to the Agreement, Accumatch agreed that and was obligated to look to retrieve all relevant information on each loan assigned to Accumatch from the SCI system. **Exhibit 1**, Section 2. This information included, however was not limited to, the street address and Tax Identification Number for each parcel of property associated with each loan assigned to Accumatch.

18. Accumatch agreed that it would, within five (5) business days, perform a review of the information it obtained from the SCI system and from Statebridge. **Exhibit 1,** Section 2, Page 3.

19. Following said review, if Accumatch had any reasonable belief that the information it obtained was inaccurate or insufficient, it agreed it would notify Statebridge about the issue within two (2) business days of Accumatch's review. **Exhibit 1,** Section 2, Page 3.

20. Accumatch did not notify Statebridge about any issues with the data and information Accumatch obtained in connection with its review of the loan data Accumatch obtained in connection with the assigned loans that are the subject matter of this action.

### Loan 11671 – the Buford Smith loan

21. On or about August 3, 2009, Ravenswood Bank in Chicago made a loan to Buford Smith, Jr., the borrower, in the original principal amount of $191,950 (hereinafter referred to as the "Smith Loan" or "Loan 11671").

22. The Smith Loan was originally secured by certain real property located in Cook County, Illinois, with a street address of 22 S. Western, Unit 401, Chicago, Illinois 60612 (the "Smith Property").

23. The fact that the Smith Loan was secured by the Smith Property was documented with a written Mortgage.

24. Said Mortgage was recorded in the Cook County real estate records and created an encumbrance on the Smith Property to secure the Smith Loan.

25. The owners of the Smith Property at the time the Smith Loan was made were Buford Smith, Jr, the borrower under the Smith Loan, and his wife, Sharon Smith.

26. Both Buford Smith, Jr. and Sharon Smith signed the Mortgage.

27. The Smith Loan was sold and assigned to SFR Venture 2011-1 Structured Transaction ("SFR"). SFR is the current owner and holder of the Smith Loan.

28. MountainView Public Private Investment I, LLC ("MountainView") is the manager of SFR.

29. On or about September 1, 2011, MountainView and Statebridge entered into a Servicing Agreement pursuant to which MountainView appointed Statebridge to service, administer, manage and dispose of SFR's assets and collateral as an agent of MountainView, including, however not limited to, the Smith Loan.

30. Statebridge entered into the Agreement (**Exhibit 1**) with Accumatch to provide tax services in connection with certain loans Statebridge was servicing under its Servicing Agreement with MountainView, including the Smith Loan.

31. Per the Agreement, Statebridge assigned the Smith Loan to Accumatch for tax servicing on or about March 16, 2015.

32. In connection with the assignment of the Smith Loan to Accumatch, Statebridge provide Accumatch with access to the SCI system so that Accumatch could obtain the information Accumatch needed to provide tax services for the Smith Loan under the Agreement.

33. The access to the SCI and other information provided by Statebridge to Accumatch contained all of the required information for Accumatch to provide full and complete tax services to the Smith Loan per the Agreement. This information included, however is not limited to, the full and complete address for the Smith Property, including the unit number.

34. In the event the loan information Accumatch needed regarding the Smith Loan was not available through the SCI system that Accumatch had access to, Accumatch could request, and Statebridge would be obligated to provide, the necessary additional information.

35. Upon information and belief, Accumatch, per its obligations under the Agreement, timely performed a review of the information it obtained from Statebridge relating to the Smith Loan.

36. Following Accumatch's review, Accumatch did not notify Statebridge that any of the information relating to the Smith Loan was inaccurate or insufficient.

37. The information Accumatch obtained from Statebridge and that was available on the SCI system clearly identified that the correct address for the Smith Property was 22 S. Western Ave, <u>Unit 401</u>, Chicago, Illinois.

38. Upon information and belief, Accumatch erroneously entered the Smith Loan onto Accumatch's system using an erroneous property address of 22 S. Western Ave., Unit 304, Chicago, Illinois (the "Erroneous Smith Address").

39. Statebridge never provided Accumatch with the Erroneous Smith Address.

40. Rather, upon information and belief, the correct unit number for the Smith Property (Unit 401) as shown in the SCI system was overwritten by Accumatch as part of Accumatch's internal address standardization process.

41. Through its own error, act or omission, Accumatch believed that the Smith Loan was secured by the property located at the Erroneous Smith Address.

42. The Erroneous Smith Address is solely and exclusively attributable to Accumatch's own error, act or omission

43. As of the March 16, 2015, the Smith Loan had been assigned to Accumatch, and Accumatch was obligated to provided tax services for the Smith Loan per the Agreement.

44. On June 26, 2015, Statebridge alerted Accumatch that Statebridge had received notice of a tax sale in connection with the real property that Statebridge understood was securing the Smith Loan (the Smith Property).

45. In response to the June 26, 2015 notice, Accumatch assured Statebridge that the taxes due in connection with the property securing the Smith Loan were not delinquent and that the property securing the Smith Loan had not gone to tax sale.

46. Accumatch's June 26, 2015 assurance to Statebridge was wrong because Accumatch was using the Erroneous Property Address.

47. On July 29 and 30, 2015, Statebridge sent additional notifications to Accumatch that the property Statebridge understood secured the Smith Loan (the Smith Property) had been sold for taxes, and that the deadline for redemption was August 4, 2015.

48. On August 1, 2015, Accumatch responded to Statebridge's notifications, again assuring Statebridge that there was no sale or delinquencies in connection with the property that Accumatch believed secured the Smith Loan.

49. Accumatch's August 1, 2015 assurance to Statebridge was wrong because Accumatch was using the Erroneous Property Address.

50. Accumatch failed to pay the property taxes due for the Smith Property per the Agreement.

51. In fact, the taxes for the Smith Property were delinquent, and title to the Smith Property was lost to a tax sale on or about August 4, 2015, because Accumatch did not pay the taxes, as it was obligated to do under the Agreement.

52. As a result of Accumatch's breach of the Agreement and failure to pay the property taxes due for the Smith Property, title to the Smith Property securing the Smith Loan was lost at a tax sale, and the Smith Loan became unsecured.

53. Accumatch's failure to pay the taxes for the Smith Property was a breach of the Agreement.

54. As a result of Accumatch's breach of contract, Statebridge sustained losses and has been harmed and damaged in an amount to be proven at trial.

55. On or about December 7, 2017, Statebridge sent notice to Accumatch of the losses sustained as a result of the loss of title to the Smith Property and requested payment of $125,420.16 to indemnify Statebridge for the loss of the Smith Property.

### Loan 25604 - 2371 Pineneedle Court

56. On or about December 5, 2008, RECA Limited Partnership, entered into a purchase money note in the principal amount of $44,400 with Carol McDonald, the borrower (the "McDonald Loan").

57. The McDonald Loan was originally secured by an Agreement for Deed – Land Contract (the "Agreement for Deed") for the real property known as 2371 Pineneedle Court, Hamer, South Carolina, 29547, County of Dillon, Tax Map #033-00-00-368 (the "Pineneedle Property")

58. Pursuant to the Agreement for Deed, RECA Limited Partnership agreed to sell, and Carol McDonald agreed to purchase the Pineneedle Property for a non-refundable down payment of $500, with the balance of the purchase price ($44,400) to be paid over time pursuant to the terms set forth in the McDonald Loan.

59. Carol McDonald resides in the Pineneedle Property.

60. The McDonald Loan and the Agreement for Deed were assigned and the Pineneedle property was sold to Home Opportunity, LLC.

61. Home Opportunity, LLC is the current owner and holder of the McDonald Loan and Agreement for Deed.

62. Home Opportunity, LLC, was the owner of title to the Pineneedle Property prior to December 15, 2017.

63. On or about August 20, 2015, Statebridge, as servicer, and Window Rock Mortgage, LLC ("WRM") entered into a Servicing Agreement, pursuant to which Statebridge agreed to service and administer certain loans owned by WRM and WRM's affiliates.

64. Home Opportunity, LLC is one of WRM's affiliates.

65. WRM is a manager of Home Opportunity, LLC.

66. The McDonald Loan was one of the loans assigned to Statebridge for servicing under the Servicing Agreement between Statebridge and WRM.

67. Part of Statebridge's duties under the Servicing Agreement with WRM included the safeguarding Home Opportunity, LLC's interest and rights in the Pineneedle Property.

68. In or about September of 2015 Statebridge assigned the McDonald Loan to Accumatch for tax servicing under the Agreement.

69. Statebridge provided Accumatch with access to the SCI system to obtain information relevant to provide tax services for the McDonald Loan.

70. The SCI system and other information provided by Statebridge to Accumatch contained all of the required information Accumatch needed to provide tax services for the McDonald Loan under the Agreement, including the full and complete address for the Pineneedle Property that was the subject matter of the McDonald Loan.

71. In the event the loan information Accumatch needed regarding the McDonald Loan and Pineneedle Property was not available through the SCI system that Accumatch had access to, Accumatch could request, and Statebridge would be obligated to provide, the necessary additional information.

72. Upon information and belief, Accumatch per its obligations under the Agreement, timely performed a review of the information provided by Statebridge relating to the McDonald Loan.

73. Following its review, Accumatch did not notify Statebridge that any of the information relating to the McDonald Loan was inaccurate or insufficient.

74. The information provided by Statebridge clearly identified that the address for the Pineneedle Property was 2371 Pineneedle Court, Hamer, South Carolina, 29547, with a map number of 033-00-00-368.

75. The map number of 033-00-00-368 in the SCI system matched up with the map number for the Pineneedle Property contained in the records of the tax assessor for Dillon County, South Carolina.

76. Upon information and belief, Accumatch erroneously identified the McDonald Loan on Accumatch's system using a map number of 033-00-00-002 (the "Erroneous Map Number").

77. The Erroneous Map Number relates to real property owned by the Carter Family Irrevocable Trust, located at 3388 Whitmire Hwy, in Union, South Carolina.

78. Statebridge never provided Accumatch with the Erroneous Map Number.

79. Statebridge made available and/or disbursed funds to Accumatch in the amount necessary to pay the property taxes associated with the Pineneedle Property, and Accumatch been using the correct property address.

80. Accumatch failed to pay the property taxes for the Pineneedle Property, and instead remitted the funds that were disbursed by Statebridge to Accumatch to the wrong property tax account.

81. As a result of Accumatch's failure to perform under the Agreement, title to the Pineneedle Property was lost to tax sale, making it impossible for Home Opportunity, LLC to perform under the Agreement for Deed.

82. As a result of Accumatch's breach of contract, Statebridge is liable to Home Opportunity and WRM for failing to protect the Pineneedle property and the losses sustained losses in an amount to be proven at trial.

83. The current owner of the Pineneedle Property RJTS Properties, LLC.

84. RJTS Properties, LLC acquired title to the Pineneedle Property through the tax sale.

85. RJTS Properties, LLC has most recently demanded $30,000 to convey title to the Pineneedle Property. However, that offer is not in writing, and the value of the property is significantly more than $30,000.

86. RJTS Properties, LLC paid $8,000 in back taxes to acquire title to the Property.

87. Statebridge has been paying rent to RJTS Properties, LLC so that Carol McDonald can continue to reside in the Pineneedle Property while Statebridge attempts to remedy the loss of title caused by Accumatch's breach of contract.

88. On or about February 21, 2018, Statebridge sent notice to Accumatch of the losses sustained as a result of the loss of title to the Pineneedle Property, and requested payment of $30,000, which was the amount needed to repurchase the Pineneedle Property from RJTS Properties, LLC, and for Statebridge to indemnify and WRM and Home Opportunity for the loss of the Pineneedle Property.

89. Accumatch has refused and denied responsibility.

**Loan 18781 – the LaFountain loan**

90. On or about September 16, 2004, First Alternative Mortgage Corp. made a loan to Shawn M. LaFountain and Jackie L. LaFountain, the borrowers, in the original principal amount of $118,044 (hereinafter referred to as the "LaFountain Loan" or "Loan 18781").

91. The LaFountain Loan was originally secured by certain real property located in Clinton County, New York, with a street address of 145 Huguenot Street, New Rochelle, New York, 10801 (the "LaFountain Property").

92. The fact that the La Fountain Loan was secured by the LaFountain Property was documented with a written Mortgage.

93. Said Mortgage was recorded in the Clinton County real estate records and created an encumbrance on the LaFountain Property to secure the LaFountain Loan.

94. The owners of the LaFountain Property at the time the LaFountain Loan was made were Shawn M. LaFountain and Jackie L. LaFountain.

95. Both Shawn M. LaFountain and Jackie L. LaFountain signed the Mortgage.

96. The Loan Agreement was modified on or about December 31, 2010.

97. The LaFountain Loan was sold and assigned to Flat Rock Mortgage Investment Trust, c/o U.S. Bank Trust National Association ("Flat Rock"). Flat Rock is the current owner and holder of the LaFountain Loan.

98. On or about May 8, 2014, Flat Rock and Statebridge entered into a Master Servicing Agreement pursuant to which Flat Rock appointed Statebridge to service, administer, manage and dispose of Flat Rock's assets and collateral as Flat Rock's independent contractor.

99. The Master Servicing Agreement included servicing the LaFountain Loan.

100. Statebridge entered into the Agreement (**Exhibit 1**) with Accumatch to provide tax services in connection with certain loans Statebridge was servicing under its Servicing Agreement with Flat Rock, including the LaFountain Loan.

101. Per the Agreement, Statebridge assigned the LaFountain Loan to Accumatch for tax servicing on or about February 5, 2015.

102. In connection with the assignment of the LaFountain Loan to Accumatch, Statebridge provide Accumatch with access to the SCI system so that Accumatch could obtain the information Accumatch needed to provide tax services for the LaFountain Loan under the Agreement.

103. The access to the SCI and other information provided by Statebridge to Accumatch contained all of the required information for Accumatch to provide full and complete tax services to the LaFountain Loan per the Agreement.

104. In the event the loan information Accumatch needed regarding the LaFountain Loan was not available through the SCI system that Accumatch had access to, Accumatch could request, and Statebridge would be obligated to provide, the necessary additional information.

105. Upon information and belief, Accumatch, per its obligations under the Agreement, timely performed a review of the information it obtained from Statebridge relating to the LaFountain Loan.

109. Following Accumatch's review, Accumatch did not notify Statebridge that any of the information relating to the LaFountain Loan was inaccurate or insufficient.

110. Upon information and belief, on or about September 26, 2016, Accumatch remitted a check to Clinton County in the amount of $1,572.14 to pay the taxes due for the LaFountain Property.

111. Upon information and belief, Clinton County returned said check to Accumatch because it did not include a $20 advertising fee that Clinton County claimed due.

112. On October 7, 2016, Clinton County served notice of a tax foreclosure on the LaFountain Property.

113. Clinton County took title to the LaFountain Property on or about January 7, 2017.

114. Statebridge attempted to reverse the tax sale, based on sworn testimony that US Bank did not received notice of the tax sale of the LaFountain property.

115. Clinton County, however, had proof that the county in fact provided notice to US Bank.

116. The LaFountain Loan had been assigned to Accumatch, and Accumatch was obligated to provided tax services for the LaFountain Loan per the Agreement.

117. Accumatch failed to pay the property taxes due for the LaFountain Property per the Agreement.

118. In fact, the taxes for the LaFountain Property were delinquent, and title to the LaFountain Property was lost to a tax sale on or about August 4, 2015, because Accumatch did not pay the taxes, as it was obligated to do under the Agreement.

119. As a result of Accumatch's breach of the Agreement and failure to pay the property taxes due for the LaFountain Property, title to the LaFountain Property securing the LaFountain Loan was lost at a tax sale, and the LaFountain Loan became unsecured.

120. Accumatch's failure to pay the taxes for the LaFountain Property was a breach of the Agreement.

121. As a result of Accumatch's breach of contract, Statebridge sustained losses and has been harmed and damaged in an amount to be proven at trial.

122. Statebridge provided notice to Accumatch of the losses sustained as a result of the loss of title to the LaFountain Property and requested payment sufficient to indemnify Statebridge for the loss of the LaFountain Property.

123. Flat Rock has demanded just over $96,000 in losses due to the non-payment of the taxes due for the LaFountain Property.

## Reimbursement of Expenses and Penalties

124. During the term of the Agreement, Accumatch has made other errors and has failed to comply with its obligation under the Agreement, including making sure that the Accumatch correctly and timely pays the property taxes due on the real estate that secures each loan serviced by Accumatch per the Agreement.

125. The loans and losses are itemized on **Exhibit 2**, attached hereto.

## CLAIM FOR RELIEF
### (Breach of Contract)

126. Plaintiff Statebridge Company, LLC incorporates the allegations contained in paragraphs 1 through 125.

127. As set forth above, Accumatch breached its Agreement with Statebridge by failing to disburse funds and to pay property taxes for the Smith Property, the Pineneedle Property, LaFountain Property, and for the loans and properties itemized on **Exhibit 2**.

128. As a result of Accumatch's breach of the Agreement, Statebridge has been injured, and has sustained losses and damages, in an amount to be proven at trial.

129. Accumatch is obligated to indemnify Statebridge has failed and refused to do so, resulting in damages to Statebridge.

**WHEREFORE**, Plaintiff Statebridge Company, LLC requests the entry of judgment in its favor and against Martin-Powell, LLC, doing business as Accumatch for the amount of damages sustained because of Martin-Powell, LLC, doing business as Accumatch's breach of the Agreement, for costs, interest, and such other relief as the Court deems proper.

Dated this 27th day of July, 2018.

FOSTER GRAHAM MILSTEIN &
CALISHER LLP

*Duly signed original on file at the offices of Foster Graham Milstein & Calisher LLP*

By: */s/ Michael G. Milstein*
Michael G. Milstein, Reg. No. 23833

Attorneys for Plaintiff Statebridge Company, LLC

<u>Plaintiff's Address and Telephone Number</u>:

Statebridge Company, LLC
5680 Greenwood Plaza Blvd., Suite 100 South
Greenwood Village, Colorado 80111
Tel. No. 303-962-6753