IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02279-KLM

STATEBRIDGE COMPANY, LLC,

      Plaintiff,

v.

MARTIN-POWELL, LLC, d/b/a Accumatch,

      Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)** [#8][1] (the "Motion"). Plaintiff filed a Response [#14] in opposition to the Motion, and Defendant filed a Reply [#18]. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the undersigned for all proceedings in this matter. *See Consent* [#15]; *Order of Reference* [#16]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the foregoing reasons, the Motion [#8] is **DENIED**.

## I. Background[2]

_____

[1]  "[#8]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2]  The Court summarizes the factual allegations in the Complaint [#4] only to the extent necessary to adjudicate the present Motion [#8]. All well-pled facts in the complaint are accepted

- 1 -

This case was filed in Denver County District Court on July 27, 2018, and removed to this Court pursuant to 28 U.S.C. § 1441(a) on September 4, 2018. *See Notice of Removal* [#1]. Plaintiff asserts one claim for breach of contract against Defendant with respect to a Property Tax Intelligence Service Agreement (the "Agreement") entered between the parties on or about January 23, 2015.[3] *Compl.* [#4] ¶¶ 11, 126-129.

Plaintiff is a loan servicer in the mortgage industry. *Id.* ¶ 7. Defendant provides tax-payment processing services and tax matching services to loan servicers by ensuring that property taxes are correctly and timely paid on the real property that secures the loans serviced. *Id.* ¶ 8. Pursuant to the parties' January 23, 2015 Agreement, Defendant agreed to, among other things, provide tax payment services on numerous loans serviced by Plaintiff. *Id.* ¶ 12. Under the terms of the Agreement, Defendant "was responsible for sending the appropriate property tax payments and the appropriate back up information to remit applicable tax payments to the appropriate taxing authorities for each loan serviced by [Plaintiff] and assigned to [Defendant] under the Agreement for tax services." *Id.* ¶ 13.

---

as true and viewed in the light most favorable to Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[3] Plaintiff attaches a copy of the Agreement to its Complaint. *See* [#1-2] at 14-20. Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, "in deciding a motion to dismiss pursuant to [Fed. R. Civ. P. 12(b)(6)], [the] [C]ourt may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"). Here, the Agreement is central to Plaintiff's claim and is attached to the Complaint as Exhibit 1. *See* [#1-2] at 14-20. Accordingly, the Court has reviewed the Agreement in order to resolve the present Motion [#8].

In order for Defendant to perform services under the Agreement, Plaintiff was required to provide Defendant with access to Plaintiff's online imaging system known as Plaintiff's "Security Connections Incorporated" system (the "SCI system"). *Id.* ¶¶ 14-15. The SCI system is an electronic database that contains the information and records related to each loan Plaintiff services, including the loan documents, street addresses, and each parcel's tax identification number. *Id.* ¶¶ 16, 17. Defendant was obligated to review and retrieve all relevant information from the SCI system on each loan assigned under the Agreement. *Id.* ¶¶ 17-18. If Defendant had a reasonable belief that any information contained in the SCI system was inaccurate or insufficient, Defendant agreed to notify Plaintiff of the issue within two business days after conducting the review. *Id.* ¶ 19.

Central to the instant Motion [#8] is Section 9 of the Agreement, entitled "Liability," which provides in full:

> The liability of Accumatch [(Defendant's business name)] is strictly limited to those liabilities arising from its failure to perform the services described in this Agreement. Except as specifically stated, Accumatch and its affiliates, officers, directors, shareholders, employees, agents, successors or assigns are not liable for any indirect, special or incidental or consequential damages of any kind (including, but not limited to, loss of profits, interest, earnings or use) whether arising in contract, tort or otherwise, for the following: (i) any damages and/or losses resulting from inaccurate or incomplete data provided by [Statebridge] or its previous tax service vendor; (ii) errors attributed to changes in the taxing authority's assessment data made after Accumatch enters the loan information into its system and for which Accumatch does not receive written or electronic notice from [Statebridge], including property address changes, legal description changes, split parcels and inactivated parcels; (iii) any losses in excess of the lesser of the total amount due on the mortgage, the value of the property, or the purchase price of the loan by the investor; (iv) any losses that occurred prior to the set-up completion date onto the Accumatch system; and, (v) on any property where

Accumatch presented delinquent taxes to the client and no action was taken at the time delinquent taxes were originally identified.

All claims from [Statebridge] must be presented in writing to Accumatch and must identify the specific loan along with a copy of the most recent tax bill or statement issued since the error was discovered, or other proof if a tax bill or statement is not available. All claims must be presented within 30 days of discovery by [Statebridge]. In no event shall a claim be presented after [Statebridge] terminates this Agreement without cause[.] Furthermore, the latest any claim may be presented is the later of the next tax installment due date for the property to which the error is attributable or within six (6) months of the date the error was committed by Accumatch.

Accumatch agrees to maintain errors and omissions coverage of no less than $5,000,000 in coverage. Accumatch agrees to provide a copy of the related policy to [Statebridge] within 15 days of execution of this Agreement and at any time upon [Statebridge's] written request.

[#1-2] at 18-19. The parties do not appear to dispute that the Agreement, including Section 9, was "bilaterally negotiated by legal counsel." *See Motion* [#8] at 9, *Response* [#14].

In the Complaint [#4], Plaintiff generally alleges that Defendant breached the Agreement by failing to disburse funds and pay property taxes on the covered loans and associated properties, and never notified Plaintiff of any inaccuracies regarding the information stored on the SCI system. *See generally Compl.* [#4] ¶¶ 20-127. Plaintiff asserts one breach of contract claim which primarily concerns three specific loans that were subject to the Agreement: (1) Loan 11671 (the "Smith Loan"); (2) Loan 25604 (the "McDonald Loan"); and (3) Loan 18781 (the "LaFountain Loan"). *Id.* ¶¶ 21-123. Plaintiff further alleges that Defendant breached the Agreement as to 110 other loans which Plaintiff itemizes in Exhibit 2 of the Complaint. *Id.* ¶¶ 124-27; [#1-2] at 21-26.

In the Motion, Defendant seeks to dismiss Plaintiff's breach of contract claim in its entirety pursuant to Rule 12(b)(6), on the grounds that Plaintiff failed to comply with, or allege compliance with, the notice requirement set forth in Section 9 (paragraph three) of the Agreement. [#8] at 2. Defendant further argues that Plaintiff "makes no attempt whatsoever to allege any facts to support any claim for damage as to any of the properties listed in Exhibit 2." *Id.* at 9.

## II. Standard of Review

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts,

taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

The Court's function in deciding a Rule 12(b)(6) motion is to determine whether the complaint has pled "sufficient facts" which, "taken as true, . . . provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero*, 510 F.3d at 1200 (quoting *Twombly*, 550 U.S. at 570). To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

**B.      Contract Interpretation Pursuant to Colorado Law**

Interpretation of a contract is a matter of state law. *DIRECTV, Inc. v. Imburgia*, 136 U.S. 463 (2015). The parties appear to agree that Colorado law controls here by

relying on Colorado case law in their briefing. *See Motion* [#8] at 3-4; *Response* [#14] at 5-6. Additionally, the parties' Agreement provides "that Colorado law shall apply." *Notice of Removal* [#1-2] at 19. Accordingly, to the extent interpretation of the Agreement is required, the Court applies Colorado law. "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002).

The primary goal of contract interpretation is to give effect to the written expression of the parties' intent. *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000). Where the words of a written contract are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). Interpretation of a contract is a question of law where the contract's construction does not depend on extrinsic evidence and where the language is susceptible to only one reasonable interpretation. *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993); *see also Stegall v. Little Johnson Assoc., Ltd.*, 996 F.2d 1043, 1048 (10th Cir. 1993) (applying Colorado law); *Evensen v. Pubco Petroleum Corp.*, 274 F.2d 866, 872 (10th Cir. 1960). Interpretation of a contract is a question of fact only when a contract term is found to be ambiguous. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909 (Colo. 1996). The provisions of a contract are ambiguous when they are subject to more than one reasonable interpretation. *Union Ins. Co. v. Houtz*, 883 P.2d 1057 (Colo. 1994).

### III.  Analysis

"To succeed on a breach of contract claim in Colorado, a plaintiff must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Larson v. One Beacon Ins. Co.*, No. 12-cv-03150-MSK-KLM, 2013 WL 5366401, at *8 (D. Colo. Sept. 25, 2013) (internal quotation and citation omitted).

In the Motion, Defendant does not contend that Plaintiff has failed to adequately allege any of the above elements of its breach of contract claim. *See generally* [#8]. Instead, Defendant primarily asserts that Plaintiff's claim must be dismissed because Plaintiff "[f]ailed to comply with the written notice provisions of Section 9, and failed to allege that it strictly complied with this provision." *Id.* at 4. Defendant separately addresses Plaintiff's breach of contract claim with respect to the (1) Smith Loan, (2) McDonald Loan, (3) LaFountain Loan, and (4) 110 other loans itemized in Exhibit 2. *Id.* at 5-9. Accordingly, the Court addresses Defendant's arguments regarding the three named loans and the 110 other loans in turn.

## A.    The Smith, McDonald, and LaFountain Loans

As to the Smith, McDonald, and LaFountain Loans, Defendant's sole argument is that Plaintiff failed to comply with, or allege compliance with, Section 9's written notice requirement when it discovered Defendant's alleged errors regarding those associated properties. *Id.* at 5-9. According to Defendant, because "Colorado law quite clearly enforces notice provisions in commercial contracts such as this[,] . . . Plaintiff's failure to abide by the notice provisions bars its claim against [Defendant] in this case." *Id.* at 2.

In its Response [#14], Plaintiff counters with two arguments. First, Plaintiff asserts that "the legal premise of [Defendant's] argument is fatally flawed" given that Section 9 "contains no language expressly (or even impliedly) forfeiting or waiving [Plaintiff's] right to sue . . . [and] contains nothing suggesting the parties ever agreed to or bargained for that provision to have the legal effect [Defendant] now reads into it." *Response* [#14] at 2. The Court understands this argument to be that because the Agreement does not provide for waiver of Plaintiff's right to recovery due to failure to provide notice, Defendant's argument lacks merit. Second, Plaintiff argues that even if Defendant's interpretation of Section 9 is correct, the Motion [#8] impermissibly seeks dismissal on the basis of "an affirmative defense that [Plaintiff] forfeited and/or waiv[ed] its right to sue by breaching that provision." *Id.*

In its Reply, Defendant maintains that the plain language of Section 9 requires written notice of a claim prior to litigation, which it argues Plaintiff failed to demonstrate in the Complaint [#4]. [#18] at 2-5. With respect to Plaintiff's argument regarding affirmative defenses, Defendant clarifies that it "is simply seeking dismissal based on Plaintiff's own admissions in the Complaint that it failed to comply with [Section] 9 [and] is not asking the Court to switch burdens." *Id.* at 6.

## 1. Affirmative Defense

The Court first briefly addresses Plaintiff's second argument that Defendant's Motion [#8] impermissibly seeks dismissal on the basis of an affirmative defense. Plaintiff is correct that it "'need not anticipate in the complaint an affirmative defense that may be raised by the [D]efendant [because] it is the [D]efendant's burden to plead an affirmative

defense.'" *Response* [#14] at 10 (quoting *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("[T]he burden of pleading [affirmative defenses] rests with the defendant."). In the Motion, Defendant is essentially making a waiver argument, i.e., that Plaintiff waived its right to sue Defendant for breach of the Agreement because it failed to comply with the 30-day notice requirement set forth in Section 9. Rule 8(c)(1) lists "waiver" as an affirmative defense. Fed. R. Civ. P. 8(c)(1). Therefore, it is generally Defendant's burden to plead the waiver defense in its answer rather than raising it in a motion to dismiss. *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) ("Rule 8(c)'s ultimate purpose is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." (internal quotations marks omitted)); *Saenz v. Lovington Mun. School Dist.*, 105 F.Supp.3d 1271, 1289 (D.N.M. 2015) ("affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss"). On occasion, however, "it is proper to dismiss a claim on the pleadings based on an affirmative defense. But that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez*, 883 F.3d at 1299; *see Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)].").

As noted above, Defendant appears to acknowledge this in its Reply [#18]. Thus, Defendant's reliance on Fed. R. Civ. P. 12(b)(6) to argue at this stage in the proceedings

that Plaintiff's claim should be dismissed because evidence establishes that Plaintiff failed to provide written notice is misplaced. Rather, dismissal pursuant to the affirmative defense is appropriate only if Plaintiff's allegations, taken as true, plainly demonstrate waiver as a matter of law. *See Yellen v. Cooper*, 828 F.2d 1471, 1476 (10th Cir. 1987) (finding district court's *sua sponte* dismissal of the complaint appropriate at the pleading stage where the factual allegations clearly established waiver as a matter of law). Accordingly, rather than addressing Defendant's argument that Plaintiff "failed to abide by the very clear written notice provisions of the contract," the Court focuses on Defendant's assertion that Plaintiff "failed to allege its compliance with the very specific terms of that provision." *Motion* [#8] at 2.

### 2. The Notice Provision of Section 9

Fairly read, the notice requirement set forth in Section 9 of the Agreement requires Plaintiff to provide Defendant with written notice of "all claims" within thirty days of discovering an "error" made by Defendant. [#1-2] at 18. It further requires that such notice include the most recent tax bill or statement since the error was discovered. *Id.* The Agreement neither defines "claim" nor explicitly states that Plaintiff's failure to comply with Section 9 forfeits its ability to take legal action against Defendant. [#1-2] at 14-20; *see Claim* Black's Law Dictionary (10th ed. 2014) ("[t]he assertion of an existing right; any right to payment or to an equitable remedy" or "[a]n interest or remedy recognized at law."). Nevertheless, Defendant avers that the plain language of Section 9 demonstrates that written notice of any error is mandatory and thus, Plaintiff's failure to comply with the

provision forfeits its right to assert a legal claim.  *See Motion* [#8] at 5-9; *Reply* [#18] at 2-5.

In the Motion, Defendant cites only three cases in support of this position.  [#8] at 3-4 (citing *Colorado Interstate Gas Co. v. Chemco, Inc.*, 987 P.2d 829, 833 (Colo. App. 1998); *Rio Grande Motor Way, Inc. v. Resort Graphics, Inc.*, 740 P.2d 517, 521 (Colo. 1987); *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004)).  *Thompson* states the well-settled rule that contract interpretation requires giving "effect to the intent and reasonable expectations of the parties" and that a contract's terms should be assigned their plain and ordinary meaning unless the parties intend otherwise.  84 P.3d 496, 501 (Colo. 2004).  The other two cases, *Colorado Interstate Gas* and *Rio Grande*, are cited by Defendant for the proposition that "[u]nder well-settled Colorado law, contract provisions 'requiring that notice of a claim be given within a specified time period are routinely enforced in accordance with their terms.'"  *Id.* at 3-4 (quoting *Colo. Interstate Gas*, 987 P.2d at 833).

As a preliminary matter, the Court makes two observations regarding Defendant's reliance on *Colorado Interstate Gas* and *Rio Grande*.  First, the Court fails to see how the proposition for which Defendant cites these cases is any different from the general rule that courts must look to the contract's plain language and enforce the language as written in the absence of any ambiguity.  *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003); *see Trosper v. Wilkerson*, 764 P.2d 375, 376 (Colo. App. 1988) (noting that "[a]n integrated contract . . . is interpreted in its entirety to harmonize and give effect to all its provisions so that none will be rendered meaningless.").  Second, the Court notes that Defendant

fails to provide any analysis of either *Colorado Interstate Gas* or *Rio Grande* to show why they are dispositive of the present Motion [#8]. Indeed, the Motion merely refers to both cases in a string citation and does not address the contractual language at issue in either case. *See* [#8] at 3-4. Nevertheless, the Court has carefully reviewed both *Colorado Interstate Gas* and *Rio Grande* to determine their applicability to the present dispute. In doing so, the Court concludes that neither case is dispositive given that the notice provision at issue in each case is easily distinguishable from the provision at issue here and given that other Colorado authority makes clear that forfeiture provisions are generally disfavored and must, to be effective, be stated in unambiguous terms. The Court address each point in turn.

In *Colorado Interstate Gas*, the Colorado Court of Appeals considered an appeal from summary judgment regarding a dispute between parties to a "take or pay" gas purchase agreement. 987 P.2d at 831. Pursuant to the agreement, the plaintiff-buyer (CIG) agreed to take or pay for a designated minimum quantity of gas from the defendant-seller (Chemco) within a given year. *Id.* at 831. If CIG did not take the requisite amount of gas from Chemco, CIG was still obligated to pay for the gas but was then entitled to recoup its payment by receiving "make-up gas" from Chemco over the next five years. *Id.* If Chemco failed to deliver the make-up gas during this time, CIG was entitled to a refund. *Id.*

When CIG sued Chemco for failing to refund money paid for undelivered gas, Chemco asserted a counterclaim alleging that CIG had underpaid invoices for gas that had been previously delivered. *Id.* at 833. At issue in Chemco's counterclaim was the

following provision in the parties' agreement which expressly required Chemco to give plaintiff notice of such pricing errors within 12 months:

> 4.5 ERRORS—In the event an error is discovered in the amount shown to be due in any statement rendered by [CIG], such errors shall be adjusted within 30 days of determination thereof, *provided that* claim [sic] therefor shall have been made within 12 months from the date of such statement.

*Id.* (emphasis added).  The Colorado Court of Appeals affirmed the trial court's holding that Chemco's counterclaim for pricing error damages for certain years was barred by this provision because Chemco had failed to give timely notice of the errors.  *Id.*  In stating that notice requirements "are routinely enforced in accordance with their terms[,]" the court observed that the plain language of the above provision "contemplates notice of, and subsequent adjustment of, specific errors on specific statements."  *Id.* at 833-34.

In the present case, Plaintiff correctly notes that Section 9's notice requirement "does not even require [Defendant] to correct any error or resolve any 'claim' that [Plaintiff] might present to it."  *Response* [#14] at 9-10.  Moreover, the notice requirement does not specify any result whatsoever if notice is not provided.  Contrast this with the conditional language found in the notice provision at issue in *Colorado Interstate Gas*, which clearly states that pricing errors "shall be adjusted . . . provided that [a claim for adjustment] shall have been made within 12 months[.]"  *Colorado Interstate Gas*, 987 P.2d at 833.  While Defendant is correct that this language does not use certain "buzzwords" such as "forfeit" or "waive," *Reply* [#18] at 4, it clearly provides that notice of a claim for any price adjustment is a *prerequisite* to such an adjustment.  To the extent that Defendant asks the Court to read a prerequisite to suit in Section 9's notice requirement, the Court declines to do so.  *See Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 685 (Colo. 1989)

(noting the "well-settled principle of law . . . that courts will not rewrite a contract for the parties"); *Roberts v. Adams*, 47 P.3d 690, 694 (Colo. App. 2001) ("The court's duty is to interpret and enforce contracts as written, not to rewrite or restructure them.").

*Rio Grande*, which *Colorado Interstate Gas* cites for the rule that notice requirements "are routinely enforced in accordance with their terms," concerned an interstate freight company's lien rights on undelivered goods pursuant to the terms of a bill of lading. 740 P.2d at 518. Because the dispute involved the interstate transportation of goods, it was undisputed that the action was governed by the Interstate Commerce Act. *Id.* at 518-19. The notice requirement at issue in the case was included in the bills of lading as required by the Interstate Commerce Act, and the decision to find waiver was based on the premise that, under the statute, "[a] party possessing an interest in goods moving in interstate commerce is entitled to insist upon compliance with the terms of the applicable bill of lading." *See id.* at 519-20. Specifically, the bills of lading in that case provided the following:

> As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in the case of export traffic, within nine months after delivery at port [of] export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

*Id.* at 521 n.3 (brackets in original). Pursuant to this provision, the Colorado Supreme Court affirmed the trial court's holding that plaintiff's failure to file a written claim within the express time period required by the bills of lading barred its claim. *Id.* at 521. The Court construed this notice requirement to mandate "that any claim for 'loss, damage, injury or delay' [ ] be filed with the carrier within nine months after delivery or, in the case of failure to make delivery, within nine months after a reasonable time for delivery has elapsed." *Id.* The Court further noted that "[t]he coverage of this provision is broad enough to encompass the type of claim asserted by [plaintiff] here." *Id.* (citations omitted). Therefore, the Court found that, "[a]s a condition precedent to recovery, [plaintiff] was required to file its claim with [the defendant-freight company] within nine months of tender of delivery." *Id.* (citations omitted).

Again, the language of the notice provision at issue in *Rio Grande* is far different from the language Defendant relies on in this case. First, written notice in that case was explicitly "a condition precedent to recovery." *Id.* at 521 n.3. Second, the notice requirement unambiguously stated that "suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant… ." *Id.* No such language is clearly and unambiguously stated in Section 9 of the parties' Agreement in this case. Therefore, the Court is not persuaded that the holding in *Rio Grande* is equally applicable to this case.

The Court is persuaded, however, by the authority Plaintiff cites which demonstrates that forfeiture clauses "are not favored in Colorado" and that "contractual provisions seeking to effect a waiver or forfeiture of a party's rights must be couched in

clear, unambiguous language." *Cooley v. Big Horn Harvestore Sys., Inc.*, 813 P.2d 736, 749 (Colo. 1991) (citing *Grooms v. Rice*, 429 P.2d 298 (Colo. 1967); *Montgomery Ward & Co. v. Reich*, 282 P.2d 1091 (Colo. 1955)). In *Cooley*, the Colorado Supreme Court examined the following sentence in a purchase agreement which purported to bar the plaintiff-buyer from asserting a negligence claim against the defendant-seller:

> IRRESPECTIVE OF ANY STATUTE, THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE, IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL OTHER REMEDIES, STATUTORY OR OTHERWISE.

*Cooley*, 813 P.2d at 748. The Court found this sentence to be, "at best[,] ambiguous and imprecise" and therefore, affirmed the judgment entered against the defendant on plaintiff's negligence claim. *Id.* at 749.

Here, the Court agrees with Plaintiff that Section 9 "contains no language expressly (or even impliedly) forfeiting or waiving [Plaintiff's] right to sue . . . [and] contains nothing suggesting the parties ever agreed to or bargained for that provision to have the legal effect [Defendant] now reads into it." *Response* [#14] at 2. Moreover, as already noted, Section 9 neither defines "claim" nor expressly precludes Plaintiff from pursuing legal action if it fails to comply with the notice requirements. *See* [#1-2] at 18. Thus, the Court finds that any failure to comply with Section 9 does not clearly preclude Plaintiff from pursuing legal action. *See also Cheyenne Mtn. Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 714 (Colo. 1993) ("Forfeitures are not favored, and contractual provisions seeking to effect a forfeiture must be stated in unambiguous language." (citing *Cooley*, 813 P.2d 736)).

Therefore, because waiver or forfeiture provisions are disfavored in Colorado and because the plain language of the notice requirement set forth in Section 9 does not state in clear and unambiguous terms that Plaintiff's failure to provide prior written notice forfeits its right to sue Defendant, the Court is not persuaded that Plaintiff's allegations, taken as true, plainly demonstrate the preclusive effect of waiver as a matter of law. Accordingly, Defendant's Motion [#8] is **denied** to the extent that it seeks to dismiss Plaintiff's breach of contract claim with respect to the Smith, McDonald, and LaFountain Loans, on the grounds of waiver.

### B.  The 110 Loans Itemized in Exhibit 2

With respect to the loans itemized in Exhibit 2 of the Complaint, Defendant's entire argument is as follows:

> Plaintiff makes no attempt whatsoever to allege any facts to support any claim for damage as to any of the properties listed in Exhibit 2. There is no "who, when, where, why or how" as to any of these properties. There is no explanation of any alleged error. There certainly is no explanation how Accumatch is even supposedly at fault. And of course, there is no allegation that any notice was ever provided to Accumatch under paragraph 9 for any of these properties. It is simply lazy and inadequate pleading. As such, any request for these unidentified "other errors" should be dismissed.

*Motion* [#8] at 9. Defendant's scant argument cites no legal authority and does not address the elements of a breach of contract claim. *See Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[D]istrict courts . . . have a limited and neutral role in the adversarial process, and [ought to be] wary of becoming advocates who comb the record . . . and make a party's case for it."); *cf. United States v. Dunkel*,

927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

To the extent that Defendant argues Plaintiff's claim regarding these loans is barred by Plaintiff's failure to comply with Section 9's notice requirement, that argument is rejected for the reasons stated above. Further, despite Defendant's argument that Plaintiff fails to meet Rule 8(a)'s pleading requirements and fails to explain Defendant's fault with respect to any errors regarding these loans, the Complaint clearly alleges that Defendant "failed to disburse funds and to pay property taxes . . . for the loans and properties itemized on Exhibit 2." [#4] ¶ 127. As Plaintiff notes, Exhibit 2 also identifies each of the 110 loans by loan numbers, lists Defendant's alleged errors with respect to each loan, and itemizes the financial loss Plaintiff allegedly incurred as a result of Defendant's errors. [#1-2] at 21-26.

Therefore, taking these allegations as true and considering the inadequacy of Defendant's argument, the Court finds that Plaintiff's allegations with respect to the loans identified in Exhibit 2 meet the *Twombly* standard and provide plausible grounds that "discovery will reveal evidence to support the plaintiff's allegations." *Shero*, 510 F.3d at 1200 (quoting *Twombly*, 550 U.S. at 570). Accordingly, Defendant's Motion [#8] is **denied** to the extent that it seeks to dismiss Plaintiff's breach of contract claim with respect to the 110 loans itemized in Exhibit 2.

### IV. Conclusion

Accordingly, for the reasons stated above,

IT IS HEREBY **ORDERED** that Defendant's Motion [#8] is **DENIED**.

Dated:  July 3, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge